*Administrator* OF GARDNER G. SMITH *v.* WORTHINGTON
C. SMITH.

*Rescission of contract on account of fraud.*

Where one partner, not well acquainted with the affairs of the firm, purchased
a portion of the partnership interest of the other partner, and gave his note
therefor, relying on the representations of the latter as to its value, which
he subsequently ascertained to be fraudulent, and the interest so purchased
was in reality worth nothing at all, the firm being, in fact, insolvent at the
time, it was held that these facts constituted a good defense to an action
against the purchaser upon the note in favor of the vendor or his adminis-
trator, though the purchaser may have made no offer to rescind the contract.

The consideration of such a note was an interest which did not exist in fact,
and could not therefore be restored to the vendor by a disaffirmance of the
contract.

Where the purchaser of property gives a note for the price and subsequently
ascertains that he has been defrauded in the sale, if the property is of any
value, and he ascertains the fraud in season to enable him to do so, he
must rescind the contract by returning the property, and he cannot retain
the property and at the same time refuse to pay the note. POLAND, J.

But where the consideration of the note is of no value, or the return of the
property impracticable, no offer to rescind is required.

ASSUMPSIT upon a promissory note, dated January 8, 1847, for
eleven hundred and nine dollars, signed by the defendant and pay-
able to the plaintiff's intestate. Trial by jury, at the December
Term, 1856,—PECK, J., presiding.

The defendant's testimony tended to show that for two years pre-
vious to the 8th of January, 1847, he had been a partner with
Gardner G. Smith and John Smith in the foundry business. A
new arrangement was then made between the members of said
firm by which an additional partner was taken in and the defend-
ant's interest was increased from three-sixteenths to one-quarter,
this increase applying both to the past and future business, and this
note was given by him to Gardner G. Smith for the additional
interest in the firm which the defendant at that time purchased from
him. Deeds were then made from John Smith and Gardner G.
Smith to the defendant and the new partner, conveying to each of
them the respective shares in the real estate of the firm to which
they were entitled by the new arrangement. During the two years

the defendant had been a member of the firm previous to the execution of this note, Gardner G. Smith was the chief and active business man of the firm, having the whole charge of the finances, and the defendant being young and inexperienced in business, in poor health, and much of the time away attending to another branch of the business, knew but very little of the condition of the affairs of the firm.

The testimony of the defendant as well as other evidence which the defendant offered to introduce, tended to show the following facts:

At the time the note in question was executed, the defendant was to a great extent ignorant of the condition of the affairs of the company and relied wholly upon the statements of the plaintiff's intestate. He made no examination of the affairs of the firm at that time, and told Gardner G. Smith when he executed the note that he knew nothing whatever about the state of their affairs, and should rely wholly upon his representations as to their condition, and the sum which he ought to pay for the share he was buying. The plaintiff's intestate then assured the defendant that he had thoroughly examined all their affairs, and that there was a clear surplus of the available assets of the firm above all their liabilities to the amount of about ten thousand dollars. The defendant then, relying upon his representations, executed and delivered the note in question to the plaintiff's intestate and signed the new partnership articles.

The defendant further testified that some time in the latter part of 1847, he began to realize the real condition of the firm; that he arrived at the conclusion that Gardner G. Smith's statements as to the condition of the firm were false by a gradual process; that he came fully to that conclusion in the year 1848, and had several conversations with Gardner G. Smith about it; that in March, 1850, Gardner G. Smith being then desirous to sell out his interest in the firm from January 1, 1844, to the defendant and one Dater, the defendant spoke to him about this note in question and told him "it was all moonshine and he should not pay it;" that Gardner G. Smith replied, "you and young Dater buy me out and we will fix that so it will be all satisfactory;" that the defendant replied it was time it was fixed and settled, and declined to buy him

out, and that within about a month thereafter Gardner G. Smith died.

The testimony of the defendant, and other testimony offered by him tended also to prove that both on the 8th of January, 1845, and on the 8th of January, 1847, the firm was wholly insolvent; that he had made a thorough examination of all their company affairs as they stood when the note was given, and that the result of this examination showed that the firm was at that time really insolvent to the extent of eight or nine thousand dollars.

The defendant also offered to prove that Gardner G. Smith on the 8th of January, 1847, when he made the representations above set forth to induce the defendant to give this note, made them knowing them to be false and with the intent to deceive and defraud the defendant.

It also appeared that the estate of Gardner G. Smith was in fact insolvent, and was not yet settled, and that no dividend to creditors had yet been declared upon it.

It also appeared that this firm from the 8th of January, 1847, to the death of. Gardner G. Smith, carried on a very extensive business and that they had agencies and contracts over a large extent of territory.

No question was asked the defendant as to the time when he discovered that the representations of Gardner G. Smith were fraudulent and made with the intent to defraud the defendant.

There was no further evidence than has been above detailed either as to the time when the defendant became convinced that G. G. Smith's representations to him were false, or as to his knowledge of the extent to which such representations were false, nor any other evidence that the defendant repudiated the contract.

Upon this evidence of the defendant, and upon the offer of the defendant to prove the facts as above stated, the court ordered a verdict for the plaintiff for the amount of the note.

Exceptions by the defendant.

*H. R. Beardsley*, for the defendant.

1. The case finds that G. G. Smith knew the firm was bankrupt to a large amount, and that with that knowledge and with the design to defraud the defendant, he falsely represented that it was

solvent; and that the defendant was entirely ignorant of the condition of the concern, and relying wholly upon the representation of G. G. Smith, gave the note.

Here are certainly all the elements necessary to constitute fraud sufficient to avoid the note.

The defendant was fraudulently induced to believe he was giving his note for something of value when in fact he gave it for mere *moonshine.*

II. It is not perceived how the case could have been varied by a rescission of the contract.

If the note was void for want of consideration in the outset nothing transpired afterwards to make it valid.

Notice by the defendant that he should repudiate the note upon the ground that he got nothing for it, as soon as he ascertained the fact, is equivalent to a rescission.

*George F. Houghton* and *B. H. Smalley,* for the plaintiff.

If G. G. Smith's representations were fraudulent so that the defendant might have rescinded the contract if he had offered to do so within a reasonable time after the fraud was discovered, he has lost his right to rescind by not exercising it within such reasonable time. Douglas' Reports, *Weston* v. *Downes;* 1 Term. 133, *Towers* v. *Barrett;* New. Reports, *Cooke* v. *Munstone;* Long on Sales 239, and notes; 3 Johnson's Chancery Cases 23, *Lawrence* v. *Dale;* Parsons on Mer. Law 56, and notes.

The opinion of the court was delivered by

POLAND, J. The evidence of the defendant, as stated in the exceptions, legally tended to prove that Gardner G. Smith had the general charge and oversight of the business of the firm, and especially of its finances, and that he had full means of ascertaining and knowing their financial condition. It also tended to prove that the defendant, from his not having been a member of the firm from its commencement, from his general inexperience in business, the fact that the general superintendence was taken by Gardner G. Smith, and especially from his absence for a time from the St. Albans establishment, had not the same knowledge or means of knowledge of the true financial condition of the firm, that was

possessed by Gardner G. Smith. It also tended to prove that the whole examination and calculation for the purpose of ascertaining the state of their partnership affairs, preparatory to the new arrangement and new firm, created January 8, 1847, was made by Gardner G., and that the defendant made no examination whatever, but relied entirely upon the calculations and representations of Gardner G. upon that subject, and so informed him at the time. That Gardner G. Smith represented that he had made a full and accurate examination and calculation of all their partnership affairs, and that after making all proper allowance for all losses and bad debts, the firm had made a clear profit of about ten thousand dollars. That the defendant believed and relied upon such representations, and was thereby induced to give the note in question for another sixteenth share in the partnership property, in addition to the three-sixteenths he already owned. At the same time suitable conveyances were executed to constitute the defendant and the other partners each an equal owner of one-fourth part of all the partnership property, real and personal. The defendant's evidence also tended to prove that at the time these representations were made, and this note executed, the firm was wholly insolvent, and instead of their having assets to the extent of ten thousand dollars, they had not enough to pay their debts by about that same amount.

The defendant also offered to prove that G. G. Smith, when he made the said representations to induce the defendant to give the note, made them knowing them to be false, and with the intent to deceive and defraud the defendant. This evidence appears to have been excluded by the county court.

Now, whether the jury would have found the facts which the defendant's evidence tended to prove, or whether the defendant could have proved what he offered, we have no means of knowing or any occasion to inquire. As the case was taken from the jury by the county court, we are to treat the case as if the defendant had sufficiently proved all the facts that his evidence tended to prove, and that he could prove all that his offer of proof contained. In this view it appears to us that, beyond all question, the note when given did not bind the defendant — that the note was wholly without any legal consideration to sustain it, and that it was obtained

by such fraudulent and deceitful representations as to make it entirely invalid. These facts too, if proved, went to the entire consideration of the note, and even beyond, so that the cases cited of a partial failure of consideration or a deceit that only reached to a part of the consideration of a note, do not apply.

But the plaintiff claims that even if the defendant was not bound by the note when given, or if he might have rescinded the contract at the time or within a reasonable time after, that he did not do so, but that on the contrary he, by his subsequent conduct, affirmed and ratified the contract, and so made the note binding upon him.

It appears from the case that on the 8th of January, 1847, when this note was given, that a new partner was introduced into the firm; that all the partners became interested as owners in the property and assets of the former partnership, and that each of the old partners owned a different interest from what he owned before.

The new firm went on with the business in an active and extensive manner, and the assets and property received from the old firm was immediately commingled with the acquisitions and business of the new firm, and this business continued to the death of Gardner G. Smith, in April, 1850.

The defendant's evidence tended to prove that he remained wholly ignorant of the true condition of the firm when said note was given, until about a year after said note was given, when, from his increased acquaintance with the affairs and business, he began to learn it, but that he was not fully informed of the true state of affairs till afterwards, sometime in 1848. Upon this state of facts was the defendant bound to rescind the contract and disaffirm the whole arrangement, when he discovered that he had been defrauded; and did his failure to do so make the note binding upon him? It is doubtless true that in cases where the purchaser of property gives a note for the price, and subsequently ascertains that he has been defrauded in the sale, if the property is of any value and he ascertains the fraud in season to enable him to do so, he must rescind the contract by returning the property, and he cannot retain the property and at the same time refuse to pay the note. But at the time when the defendant, as he claimed, discovered that

he had been defrauded into giving this note, the state of affairs was such that it was impossible to rescind the contract and restore either of the parties to their former condition and rights. The state of the effects and property of the firm had made it entirely impracticable. So too the fact that the other partners had acquired interests in it, precluded any such rescinding or restoration.

But we think, considering the position of the parties and the nature and position of the interest or property, the defendant could never have been called on to make any offer to rescind, in order to enable him to avoid the note. The note was given to purchase a share of Gardner G. Smith's interest in the partnership, the defendant being already a partner. What interest has a partner in the partnership property and effects? Each partner has a right, after the partnership is closed and the partnership liabilities extinguished, to have his proper share of the effects and funds. All the partnership property is liable, primarily, for the partnership debts, and each partner has an equity to have the partnership effects applied for that purpose before any division can be made among the partners. The case, as the defendant made it, showed that the whole patnership effects were insufficient to pay the debts. The defendant, as well as Gardner G. and the other partners, was liable for all those debts, and he might well require all the property to be applied to pay them. If any portion of the property and effects went from him into the hands of Gardner G., it was equally holden to be applied for the same purpose, and so was all the property irrespective of what their interests were as between themselves. The note was given for an interest which did not exist in fact, and could not, therefore, be restored by any disaffirmance. For these reasons we think the evidence should have been submitted to the jury upon the evidence given, and such as the defendant offered, which was excluded, and the judgment of the county court is, therefore, reversed, and the case remanded to the county court for trial.