## C. M. WELLS ET AL. v. J. M. HOUSTON.

### Decided June 11, 1902.

**1.—Estate in Expectancy—Sale of—Fraud—Equitable Relief.**

An heir apparent may make a valid conveyance of his estate in expectancy, and equity, it seems, will afford relief against fraud in obtaining such a conveyance,—certainly so where the conveyance is in part of an estate in praesenti and the consideration for the whole transaction is entire and inseparable.

**2.—Fraud—Cancellation—Pleading.**

In an action to cancel a conveyance for fraud, allegations in the petition that the grantee knew the value of the property when the sale was made and fraudulently concealed it from the grantor, knowing that he was ignorant of its real value, are material where made and taken with other appropriate pleadings.

**3.—Same—Friendly Relations—Pleading.**

In such action evidence of the friendly relations of the parties may be considered in connection with other facts and circumstances in determining whether fraud was practiced in obtaining the deed, and such relations need not be specially pleaded in order to admit proof thereof.

**4.—Assignment of Error.**

Where several assignments of error referring to different subjects are not briefed separately, and no propositions of law or fact are made under them, they will not be considered.

**5.—Jury—Challenges.**

Complaint on appeal that the trial court refused to allow each of several defendants six peremptory challenges and separate jury lists, is unavailing where it is not shown that defendants exhausted the number of challenges allowed them.

**6.—Fraud—Cancellation—Charge—Harmless Error.**

Where, in an action to cancel a deed for fraud, the charge required a finding by the jury of matters well pleaded and sufficient to authorize the cancellation on the ground of fraud, mental incapacity of the grantor and inadequacy of price, and the evidence was sufficient to sustain the findings for plaintiff therein, it was harmless error that the charge also required a finding as to other matters the submission of which was not justified by the evidence.

**7.—Same—Ratification.**

The question of ratification is one of fact for the jury where there is evidence tending to show that at the time of the alleged ratification the grantor had no more knowledge of the facts and fraud than at the time of the conveyance.

**8.—Same—Inadequacy of Price—Charge—Harmless Error.**

A charge that the jury should find that the conveyance was procured by fraud if the consideration was so inadequate as to shock the conscience was error as being on the weight of evidence; but the error was harmless where the evidence was sufficient to establish fraud and that the grantor had not mental capacity enough to know what he was doing, and it was not shown that an adequate consideration was paid for that part of the property conveyed consisting of an estate in expectancy.

**9.—Same—Mental Incapacity—Evidence.**

Where mental incapacity of plaintiff at the time of making the conveyance was one of the grounds alleged for cancellation, the opinion of witnesses as to his mental condition at the date of the conveyance, at the time of the acts offered to show ratification, and thereafter to the time of the trial, were admissible to enable the jury to determine whether such condition was temporary or a fixed mental condition.

Appeal from Gonzales.   Tride below before Hon. M. Kennon.

*Harwood & Walsh* and *Burges & Hopkins,* for appellants.

*Yancy Lewis, Atkinson & Abernethy, McNeal & Jones,* and *Denman, Franklin & McGown,* for appellee.

NEILL, Associate Justice.—This suit was brought by the appellee against appellants, C. M. and J. B. Wells and H. L. Kokernot,—against the two first named appellants to cancel a certain deed of conveyance made by appellee to C. M. Wells, upon the ground that it was procured by fraud practiced upon him by said appellants, and against Kokernot to cancel a mortgage on the property conveyed by the deed, made to

him by C. M. Wells to secure certain indebtedness, upon the grounds that the mortgage was to secure an antecedent debt and that the mortgagee was charged with notice of the fraud by which the deed to the property was obtained.

C. M. and J. B. Wells denied the alleged fraudulent procurement of the deed; C. M. plead ratification and estoppel, and J. B. disclaimed any interest in the property, and denied any participation in or knowledge of the alleged fraud and his liability therefor.

Kokernot plead that he took the mortgage in good faith without notice of the alleged fraudulent procurement of the deed to secure a bona fide debt made contemporaneous with the mortgage upon the faith of its security. C. M. Wells plead in reconvention his ownership of the property, that appellee's claim to it was a cloud upon his title, and prayed that it be removed. For a more complete statement of the nature of the case, see our opinion on a prior appeal. 23 Texas Civ. App., 629.

The case was tried before a jury and the trial resulted in a judgment in favor of appellee canceling the deed and mortgage and for his recovery of the property.

The only issues of fact are: (1) Was the deed from Houston to Wells procured by fraud? (2) If so procured, was it afterwards, with knowledge of the facts constituting the fraud, ratified by Houston? (3) Was the mortgage taken by Kokernot in good faith for a bona fide debt contract upon the faith of its security when executed without notice of the fraud. These were the questions for the jury to determine. They found in favor of the appellee on each one of them, and as there is no assignment of error calling in question the sufficiency of the evidence to support their verdict on the first and third issues of fact stated, we may assume, without examining and discussing the evidence, that the finding upon each of them is correct. This renders it only necessary for us to consider whether the evidence is reasonably sufficient to support the verdict upon the issue of ratification. This we will do when we reach the assignment of error pertinent to the question, and then, as incidental to it, consider to some extent the evidence on the first issue stated.

1. The first assignment of error insisted on in appellants' brief is: "The court erred in refusing to sustain the special exception of the defendant C. M. Wells contained in his first amended supplemental answer filed on July 3, 1901, to plaintiff's first amended original petition filed January 11, 1901, as to all those portions of plaintiff's third supplemental petition which seeks to recover any interest that J. M. Houston may hereafter inherit or receive as devisee from his mother, brothers, or sisters now living, and to set aside and cancel the deed executed by him as therein stated, in so far as it attempts to convey any interest which may be inherited by him after the date of the execution of said deed, for the reason that it does not appear from said pleadings that any of said relatives are dead, save Julia Priest, who, according to said

pleadings, sold her interest in her lifetime, and before the execution of said deed by plaintiff; but it does appear affirmatively by said pleading that the mother and brothers and sisters of J. M. Houston are now living and that said plaintiff had no interest in their said estates which could be conveyed when said deed was executed, and that since the execution of said deed, and up to this time, has inherited no estate from said relatives, and said petition alleges no rights of plaintiff in said estate which he can assert in this suit."

It is sufficient to say, without setting out the allegations in the petition to which this assignment is directed, that appellee alleged that the deed sought to be canceled conveyed, in addition to the interest he owned in his deceased father's estate, all interest which he might thereafter inherit from his mother and his brothers and sisters, derived from the estate of R. Houston, deceased, and appellee's mother, Sallie J. Houston.

Appellants' contention is that the deed, in so far as purports to convey the interest appellee may inherit from his mother, brothers and sisters, is void at law and conveyed no title, and will be good in equity only in event the expectant estate is inherited by the grantor; that until then the remedial powers of a court can not be invoked to determine a title which is neither in Wells nor appellee. The purpose of this suit, so far as the estate in expectancy is concerned, is not to determine the title of either Wells or Houston to it (for it is conceded that neither has title now), but to determine whether the instrument which purports to convey it shall be canceled. It is too well settled to require citation of authorities that an heir apparent may convey his future and expectant interest in real and personal property and that such conveyance will be enforced by courts of equity, if the purchaser paid fair value for the property; upon the happening of the contingency which would, but for the conveyance, vest title to the property in the grantor. The deed was intended to and may have the effect, upon the happening of future events, to vest the title, which appellee may inherit, in C. M. Wells. This effect will in equity be given it should appellee's mother, brothers, or sisters die intestate without other heirs or heir than he, provided the grantor can then show that his purchase was made in good faith and he paid the fair value of the property—the value to be estimated at the time of the conveyance. The appellee says the conveyance was obtained by fraud and on an inadequate consideration. If this is so equity will never sanction the contract, nor permit the grantee, should the contingencies ever happen which otherwise would vest him with title, to take the property. Ordinarily when a man has been induced by fraud to convey property for an inadequate consideration he must seek relief from the courts within a reasonable time after he discovers he has been defrauded. At law his remedy is for recovery of the property or damages recoverable in an action for deceit; at equity, a cancellation of the contract. The statute of limitation will bar the one; laches will, ordinarily, defeat the other. When an expectancy is conveyed, no

remedy is given at law, for it views the conveyance as void ab initio.
His remedy can only be the equitable one, and appellant's contention is,
it is not given him; that he must await the happening of the contin-
gencies that would invest him with title to the property and make his
fight then. Since Jacob took advantage of his brother's helpless, starv-
ing condition to obtain his birthright for a mess of pottage, estates in
expectancy have been among men the subjects of contract; and in mak-
ing them, too often has it been the voice of a Jacob and the hand of
an Esau. Whenever property, the subject of contract, is conveyed—
whether it be an estate in presenti or in futuro—and the contract is
obtained by fraud and inadequacy of consideration, equity will not with-
hold its relief from the party defrauded nor delay him in obtaining it.
It strikes down fraud when and wherever found, and wrests its fruit
from the fraudulent hand and restores it to whom it belongs. Why
should it make an exception in a case where an estate in expectancy is
the subject matter of the fraudulent contract? If it can not interpose
its remedy of cancellation, when invoked, the contract must stand un-
impeached and the fraud uncondemned until the occurrence of the con-
tingency which would vest title to the property. In the meantime the
defrauded party is deprived of his right to convey it to another though
he might obtain for it an adequate consideration. Besides, the evidence
upon which his right of cancellation depends may not be accessible when
the time arrives for his fraudulent vendee to claim the property by
virtue of the contract. But it is unnecessary to protract the discussion
of the question raised by this assignment; for as is said in Pomeroy's
Equity, section 953: "The rule is well settled that all conveyances,
sales, and charges, and contracts of sale or charge, of their future and
expectant interest made by heirs, reversioners, and other expectants
during the lifetime of their ancestors or life tenants, upon an inadequate
consideration will be relieved against in equity, and either wholly or par-
tially set aside." The effect of appellants' exception to appellee's peti-
tion, upon which the ruling of the court is made the basis of this assign-
ment, is to admit the alleged fraud in procuring the conveyance. If
it was obtained by that means,—and it is not denied that the evidence
upon the trial was sufficient to show it was,—then the conveyance should
be set aside though part of the property was an estate purely in expec-
tancy. Even if appellants' contention were as a general principle cor-
rect (which we do not believe), it could not be invoked in a case like this,
where title to a part of the property had vested in the grantor and a part
an expectant estate. That the court had jurisdiction to cancel the
deed as to the vested estate is not questioned by appellants, and the exer-
cise of such jurisdiction would necessarily involve the validity of the
entire conveyance—the transaction and consideration paid for the
estates in presenti and in futuro being the same entire and inseparable.

2. The next assignment of error insisted upon by appellants com-
plains of the courts refusing to sustain their special exceptions to all of
paragraphs 10 and 11 of plaintiff's first amended original petition upon

which the cause was tried. The appellee has filed a cross-assignment questioning the ruling of the court on the exceptions in striking any of the allegations from the petition contained in said paragraphs.

It would require too much space to set out in this opinion the portions of the petition upon which the rulings invoked by the exceptions were directed which are made the basis of these assignments. We deem it sufficient to say that it evidently was not the intention of the pleader by these paragraphs, taken either separately or together, to state his entire cause of action; but that the matters alleged in them should be taken and considered in connection with the allegations in preceding and subsequent portions of the petition. The allegations to which the exceptions were not sustained are such as were severable from those averments which were stricken from the petition by the rulings of the court. They are material; and, when taken and considered with the allegations unaffected by the exceptions, show a good cause of action independent of the averments to which the exceptions were sustained. In an action of this character, where a deed is sought to be canceled upon the ground of fraud, allegations that the vendees knew the value of the property when the conveyance was made, and, with such knowledge, fraudulently concealed its value from their grantor knowing that he was ignorant of its real value, are certainly material when made and taken in connection with other appropriate allegations. As to such, and like averments, the exceptions were overruled, and we think properly so. In view of the disposition we shall make of this appeal we might let the matter rest here without considering appellee's cross-assignment. But from the position taken by able counsel for appellants and the ruling of the trial judge (whose learning, ability, and fairness entitle each to the highest respect), we fear that a misapprehension of our former opinion in this case induced counsel to take the position, and his honor to sustain it by his ruling. The allegations to which the exceptions were sustained are in substance, that there had existed from their boyhood the closest relations of intimacy, friendship, and confidence between J. B. Wells and plaintiff's father, as well as between said Wells and J. D. Houston, plaintiff's uncle and executor of his father's estate; that J. B. Wells was an appraiser of the estate, and was advised with in confidence by the executor in its management; that its value, condition and every material fact connected therewith were in confidence freely disclosed to him by J. D. Houston; that plaintiff knew of this intimate relation of friendship existing between J. B. Wells, plaintiff's father and executor of his estate, and by reason thereof had the most implicit confidence in said Wells, etc.

That plaintiff and C. M. Wells had been companions and closest friends from boyhood, had been schoolmates, collegemates and roommates; that plaintiff had the greatest regard and affection for both C. M. and J. B. Wells, and had reposed in the former the most implicit confidence and trust; that because of the relation between their fathers, the lifelong intimacy of their families, because of his association with

both, each had and exerted over him the strongest influence, and he was easily guided and controlled by their expressions of opinions as to what would be to his interest and benefit.

These allegations were made in connection with and in relation to others setting forth the grounds upon which plaintiff relies to have the deed from him to C. B. Wells canceled. Like allegations were contained in the original petition upon which the case was tried and the judgment rendered in favor of plaintiff reversed by us on a prior appeal. On that trial, the court in its charge seemed to regard the relation of friendship existing between plaintiff and C. M. and J. B. Wells as one of such confidence and trust as placed upon C. M. Wells the burden of making a full and fair explanation and communication of every material particular affecting the sale which was known to him and unknown to plaintiff. In passing upon that part of the charge we only held, or intended to hold, that friendship is not a relation from which the law will infer such confidence and influence as raises a presumption against the validity of a transaction, and cast upon the party obtaining an advantage in it the burden of proving the entire fairness of the transaction. There are certain relations of trust,—such as parent and child, guardian and ward, trustee and cestui que trust, attorney and client,— where the danger of allowing persons holding such relations with others to deal with them is so great that the presumption ought to be and is against the transaction, and the person holding the trust or influence ought to be and is required to vindicate it from all fraud. But friendship has never been classed either by law or equity among such relations. This is all we intended to hold on the question in our former opinion. We never intended to be understood as intimating that such intimate relations of friendship as were alleged by plaintiff to exist between him and the appellants could not be taken and considered in connection with other facts and circumstances in determining whether such fraud was practiced on him in obtaining the conveyance as required or warranted it to be canceled. While the law recognizes no vantage ground in friendship, and regards friends as standing upon equal footing, where the confidence and trust given to one is not necessarily greater than that reposed in him by the other,—where the one is as liable to be imposed upon by the other as the other is to impose upon him,—yet it can not be said that advantage may not as easily be taken of this relation to perpetrate a fraud as any other relation existing among men. Because one is not liable to expect a friend to take an undue advantage of him, as against his friend no one wears a shield of protection or a sword of defense. All the barriers of protection that one erects against others are broken down by friendship; and a man stands unguarded, unarmed, and unprotected from the machinations of him he deems his friend. He was a man of wisdom and experience who promised God in his prayer that if He would save him from his friends he would protect himself from his enemies.

We are not of the opinion that the matters stated, alleged by plaintiff,. were not subject to appellant's exceptions; and that evidence should have been heard upon them and considered by the jury, in connection with the other evidence in the case. It was not necessary, however, that such matters should have been specially plead to admit in evidence proof of them.

3. Appellants' fifth, sixth, and seventh assignments of error refer to different subjects, and as they are not briefed separately and no proposition of law or fact is made under them, they are not entitled to consideration.

4. As it does not appear from appellants' bill of exception referred to in their eighth assignment of error that they or either of them exercised or attempted to use all of the six challenges that they were allowed, no injury is shown to have resulted to any or either of them from the court's refusing to allow them separate jury lists and six peremptory challenges each. Railway v. Wessindorf, 39 S. W. Rep., 132; Watts v. Du Bois, 66 S. W. Rep., 698.

5. The third paragraph of the court's general charge is as follows: "If you find from the evidence that, at the time of the execution of the original contract between plaintiff and C. M. Wells, the mind of the plaintiff was affected by the habitual excessive use of intoxicating liquor to such extent as to materially interfere with his reason, judgment, and will; that such condition was then known to C. M. Wells, and that the plaintiff was ignorant of the true value of the property and rights he was conveying to Wells, and that such ignorance on the part of plaintiff was known to Wells, and that intending to defraud plaintiff, the said Wells induced plaintiff to execute the contract mentioned, representing to plaintiff that his (Wells') possessory rights in the Windmill pasture were materially greater than they really were, and that plaintiff was ignorant of the falsity of such representation in regard to such possessory rights; and you further find that the consideration for the execution of said contract by plaintiffs was inadequate, you will find that such contract was invalid at the time of its execution."

This portion of the charge is assigned as error upon the ground that there is no testimony in the record authorizing the submission of the issues as to whether Wells falsely represented to Houston that his possessory rights in the Windmill pasture were materially greater than they really were, and that appellee was ignorant of the falsity of such representations.

It will be observed that before the jury could, under the charge, find the contract invalid at the time of its execution, they were required to find, (1) that Houston's mind at the date of the contract had been impaired by the habitual use of intoxicating liquor to such an extent as to materially interfere with his reason, judgment, and will; (2) that such condition of Houston's mind was then known to C. M. Wells; (3) that appellee was ignorant of the true value of the property and rights he was conveying; (4) that such ignorance was known to Wells;

(5) that intending to defraud appellee, Wells induced him to execute the contract; and (6) that the consideration was inadequate. These matters were all plead by plaintiff, and the evidence introduced was reasonably sufficient to sustain every one of them. The jury evidently found that they were established facts. Their establishment was sufficient, independent of every other fact, to require a cancellation of the conveyance. Therefore appellants were not prejudiced by the charge requiring the jury to find, in addition to such facts, that Wells represented to appellee that his possessory rights in the pasture were materially greater than they were, and that Houston was ignorant of the falsity of the representations, before they could find the contract invalid. Requiring such additional findings, if error, was such as only appellee could complain of; for it may have been prejudicial to him, but it could not have prejudiced appellants. Besides we think there was evidence, though it may be regarded circumstantial, which justified the court, as against appellant, in submitting such additional issues to the jury. The original deed from Houston to Wells states the consideration for the former's entire property to be a one-half interest in 200 head of cattle, and the transfer of Wells' possessory rights in an undivided one-half of what is known as the Windmill pasture, containing about 8000 acres. There was evidence tending to show that this pasture was in fact an inclosure in which Wells had no possessory rights except that of a naked trespasser, the land being partly the property of the State and partly of parties under whom Wells was not shown to hold any right. At the time the deed was executed Wells agreed, at any time after four years, at Houston's option, to pay him $3800 for his possessory rights in the pasture. He subsequently modified the contract by agreeing to pay him $3300 therefor at the end of four years at Houston's election, Wells having in the meantime advanced him $500 thereon. This was tantamount to a representation on the part of Wells that when the deed was made he had the right to the possession of the land inclosed as a pasture, and that such possessory right conveyed would continue in Houston at least four years thereafter, when, under the facts, the so-called possessory right might have been terminated at any moment at the will of the real owners of the property inclosed. These facts were also tantamount to a representation by Wells to Houston that the so-called possessory right of the pasture would be worth, after Houston had enjoyed it for four years, the sum of $3800, and to get that sum of money for it at the expiration of that time, he had only to elect to take it. The jury, however, found that a half interest in the 200 head of cattle and the possessory rights in the Windmill pasture were worth only $1200, and the testimony strongly tends to show that the half interest in the cattle was worth that much, which establishes that the so-called possessory right in the pasture was worth scarcely anything. The evidence was reasonably sufficient to show that appellee was ignorant of the falsity of the representation so made in regard to such possessory right.

6. The tenth assignment of error complains of the court's refusing to peremptorily instruct the jury at C. M. Wells' request to return a verdict for all of the defendants; and the eleventh complains that the verdict of the jury is contrary to the law, as charged by the court, and the facts of the case, in that had the jury followed the charge in reference to the defenses plead, the undisputed evidence and admissions of plaintiff himself would have required a verdict in favor of the defendant C. M. Wells. These assignments, which are briefed together, require us to consider the evidence pertinent to the second issue of fact stated in the preceding part of this opinion, which is: If the deed from Houston to Wells was procured by fraud, was it afterwards, with knowledge of the facts constituting fraud, ratified or acquiesced in by appellee?

"Ratification and acquiescence are always questions of fact. There can be neither without knowledge. The terms impart this foundation for such action. One can not waive or acquiesce in a wrong while ignorant that it has been committed. Current suspicion and rumor are not enough. There must be knowledge of the facts which will enable the party to take effectual action. Nothing short of this will do, but he may not willfully shut his eyes to what he might readily and ought to have known. * * * The burden of proving knowledge of the fraud and the time of its discovery rests upon the defendant." Pence v. Langdon, 99 U. S., 578; Baker v. Lever, 67 N. Y., 304; Baker v. Spencer, 47 N. Y., 562; 2 Pom. Eq. Jur., sec. 917, note 2; Engeman v. Taylor, 33 S. E. Rep. (W. Va.), 922; Smith's Admr. v. Smith, 30 Vt., 139.

"Since fraud, whether consisting of false representations or intentional concealments, or of any deceptive practice, does not render a contract absolutely void, but merely *voidable* at the option of the injured party, such party may always waive the objections which otherwise might be taken in his behalf, and thereby ratify the agreement and make it as binding as though it had been originally free from all vitiating incidents or elements. The waiver may be express, or it may consist in acts whereby the party shows an intention to adopt the contract, or where he claims and enjoys in whole or in part the benefits which it confers. Such acts, however, in order to constitute a waiver must be done with *full knowledge* of all the facts; for a person can not be held to have waived, by his conduct, a fraud of which he was at the time wholly ignorant." Pom. on Contr., sec. 279. But as to expectant estates, it has been held that during the continuance of the same situation between the parties, acquiescence in the sale of such expectancies is of no effect." Gowland v. De Faria, 17 Ves. Jr., 20.

The evidence is reasonably sufficient to show that when the original deed was made by Houston to Wells, appellee's mind was impaired by drink to such an extent as to materially interfere with his reason; that his mental condition was known to Wells at that time; that this impaired condition continued without cessation until the acts claimed by appellants to be in ratification and acquiescence of the original contract had been completed; that appellee and Wells had been from boy-

hood up to and throughout the entire transaction, and all the acts done afterwards in relation to it, bosom friends, and that appellee reposed in Wells the most implicit confidence; that at the time of the original conveyance Houston's interest in his father's estate, independent of his expectancy in the estate of his mother, brothers, and sisters, was worth in the neighborhood of $20,000; that Wells was acquainted with the value of the estate and its management; that Houston was ignorant of the value of the estate, because knowledge of its condition and management was designedly withheld from him by his father's executor, for the commendable purpose of inducing him to change his dissipated habits and go to work like a man; that Wells knew at the time of the original transaction that J. M. Houston had been kept in the dark as to the value of the estate and was laboring under the belief that it was heavily involved in debt, and knowing of such ignorance and mistaken belief of Houston, designedly withheld from him his knowledge of its value and condition. That the consideration received by Houston for the property transferred by him to Wells did not at the time of the transaction exceed $1200. That Wells knew the value of this property at the time and induced Houston to believe that it was worth a much greater sum. Knowing all these facts and that Houston's mind was so impaired by drink as to materially interfere with his reason and of his ignorance of the value of the property he was conveying and of the consideration received, C. M. Wells took advantage of them and of Houston's mental imbecility, his ignorance, and of the confidence and friendship reposed in him, to fraudulently obtain from appellee the deed sought in this proceeding to be canceled.

The only question of fact upon the issue of ratification and acquiescence was Houston's knowledge of the fraud imposed upon him in the original transaction at the time of the acts of ratification and acquiescence plead by appellants; for these acts are established by the undisputed evidence, and if Houston had such knowledge or the law would impute it to him, the ratification would be complete. The question as to whether he had such actual or imputed knowledge was one of fact for the jury to determine from the evidence. There was evidence upon this issue. It reasonably tends to show that his impaired mental state, which was such as to materially interfere with his reason, existed at the time of the several alleged acts of ratification and acquiescence; that his ignorance of the value of the property he had conveyed continued; that considering his impaired mental condition, his judgment and reason were not such as would have enabled him to have ascertained the value of the property, or have obtained such knowledge as would have put a reasonable man upon inquiry as to its value, or to have discovered the facts and circumstances by which he was defrauded by C. M. Wells in the transaction. In short, the evidence reasonably tends to show that at the time of the alleged acts of ratification he had no more knowledge of the facts constituting the fraud perpetrated upon him that he had at the time of its perpetration. When the principles of law above

cited are applied to the facts in this case, appellants' position that the question of ratification should not have been submitted to the jury can not be maintained. In view of the fact that the burden was upon appellants to show knowledge on the part of appellee of the facts constituting the fraud in the original transaction, and of the evidence which strongly tends to show that he had no such knowledge at the time of the alleged acts of ratification, the jury properly found against appellants on this issue.

7. At the appellee's request, the jury were instructed if they should find from the evidence that the consideration for the conveyance sought to be canceled is so grossly inadequate as to shock the conscience, to find that the instrument was procured by fraud. And upon it appellants base an assignment of error.

"The formula that inadequacy of consideration must be so great as to shock the conscience and to furnish in and of itself conclusive evidence of fraud 'to either warrant a rescission or defeat specific performance,' was first used at a time when courts were in the habit of regarding fraud as a conclusion of law, established by means of legal presumptions, and it has been, like many expressions, unthinkingly and carelessly repeated by case after case, without any notice of the complete revolution which has taken place in the theory of fraud. As fraud is now regarded as a fact, and its existence is ascertained, like that of any other fact, by comparing and weighing the evidentiary matter, it is plain that the phrase 'conclusive evidence of fraud,' is, from the very nature of the case, an absurdity and impossibility; what would be abundantly conclusive to one judge or jury will come far short of convincing another judge or jury." We here break the quotation to observe that what might shock the conscience of one jury might not affect the conscience of another. "The phrase, and the thought which it contains, belongs alone to a system in which fraud is always the result of a legal presumption. Inadequacy is evidence, and the only rule which can possibly be laid down is, that it must be, to the judgment of the triers, satisfactory evidence of fraud." Pom. on Contr., 273, 274.

Inadequacy may be the only evidence upon the issue of fraud, and for the court to say that it may have such effect upon the jury's conscience as to furnish conclusive evidence of fraud is clearly a charge upon the weight of evidence, which is prohibited by statute in this State. It is for the jury to determine the probative force of inadequacy of consideration and to say whether or not it is sufficient evidence to establish fraud. When such evidence is before them its weight must be determined by the exercise of judgment and reason. Conscience may perhaps aid them in their determination, and approve their verdict, but they must be governed by reason and judgment in finding it.

It would be carrying the doctrine of "invited error" an extreme length to say that because an erroneous charge was given at the request of both parties upon a former trial, it can not in a subsequent one be complained of or made the basis of an assignment. But in answer to such a

proposition advanced by appellee it is sufficient to say that no charge in the language complained of was given upon the former trial. The charge referred to, given them at defendants' request, is: "Mere inadequacy of price, or the fact that a hard bargain has been driven, is of itself no valid ground for setting aside a contract made by a man of sound mind and fair understanding. In order to consider the question of the value of the property received by J. M. Houston, you must find that, in addition to inadequacy of price, there was some relation of confidence and trust as has already been explained to you; and, in the absence of such confidential relation, you will not consider the question of adequacy of price, unless you find the inadequacy so great as to shock the conscience by its statement." Note the difference in the two charges. In the one complained of on this appeal, if the consideration was so grossly inadequate as to shock the conscience the jury were required to find that the instrument was procured by fraud. It in effect makes such inadequacy conclusive evidence of fraud. In the other charge, if there was no other evidence of fraud than inadequacies of price, the jury were not allowed to consider inadequacy unless it was so great as to shock the conscience. But they were not told what weight should be given it in their consideration,—they were simply permitted to give it consideration. *It* was not complained of on the other appeal, and was not before us for consideration and none was given it. For convenience it, with the main and all special charges, was copied in our former opinion, but we never apprehended that because it was not considered or commented upon, any lawyer would deem that it had met the sanction and approval of this court. We didn't pass upon it then and don't pass upon it now, except to point out the difference between it and the one under consideration.

It being error to give the charge complained of, was it prejudicial? It will be noted in the first place that the charge is upon the issue of fraud regarding the original contract between appellee and C. M. Wells, and that the sufficiency of the evidence to establish Wells' fraud in that transaction is not questioned by him or any of his coappellants on this appeal. It is virtually admitted. The evidence fully establishes it. Why, then, should an erroneous charge on a question upon which no complaint is made of the jury's finding, which is virtually admitted, and the verdict fully sustained by the evidence, be taken as a ground for reversing the judgment? To set aside a judgment for such a cause, would be to say, "Though appellants do not complain of the verdict against them on an issue which is too clearly established by the evidence to admit of controversy even by appellants themselves; yet because a charge upon the weight of evidence—which did no harm—was given, the case must be tried again for the purpose of establishing a fact about which there is now no controversy."

In the second place the deed, in addition to the estate bequeathed appellee by his father, the title to which is vested in him absolutely, included estates in expectancy which were so blended and interwoven as

to be inseparable from the transaction. We have seen that a contract for the conveyance of an estate in expectancy is subject to cancellation. The rule is well settled that a party dealing with an expectancy must prove that the bargain was upon an adequate consideration, was entered into carefully, deliberately, and with a knowledge of all the circumstances connected with it. Nimmo v. Davis, 7 Texas, 26; Hale v. Holland, 90 Texas, 427; Clark v. Malps, 31 Beav., 87; Gowland v. De Faria, 17 Ves. Jr., 20; Shelby v. Nash, 3 Madd., 236; Davis v. Duke Marlborough, 2 Swanst., 113. It is the value of the property, and not the value of the expectant estate, which the purchaser must pay to make the transaction valid. McClure v. Raben, 9 Law. Rep. Ann., 479. And it must be the fair market price at the time of dealing, and not value according to calculations of actuaries on the tables. Earl Aldborough v. Trye, 7 Clark & F., 436, West, 221; Edwards v. Burt, 2 De G. M. & G., 55, 15 Eng. L. and Eq., 434. The appellant Wells made no such showing; but it appears from the evidence that the consideration paid did not equal in value the property of the expectant estate conveyed. If it had been shown that the consideration only equaled in value the estate devised appellee by his father, then Wells would, if the conveyance is allowed to stand, get the expectancies for nothing. If on the other hand it had been shown that the consideration equaled only the value of the expectant estates, he would get the estate devised appellee by his father's will for nothing. But as the transaction was an entirety, and must either be sustained or annulled as a whole, appellants' failure to show that the bargain as to the expectant estates was upon an adequate consideration, was entered upon carefully and deliberately by the appellee with a knowledge of all the circumstances connected therewith,— regardless of the erroneous charge,—required a verdict in favor of appellee upon the issue of fraud in the original conveyance.

In the third and last place, before the jury could, under the charge of the court, find for appellee on the issue of ratification they had to "find that when the original contract was executed, the plaintiff's mind was impaired by the habitual use of intoxicating liquor, that he did not understand what he was doing, * * * and that he was in a like mental condition" when the alleged acts of ratification occurred. Having found for appelle on this issue, they necessarily found that when the original contract was executed his mind was so impaired by the habitual use of intoxicating liquor that he did not understand what he was doing. This fact having been found upon sufficient evidence, was in and of itself sufficient to show the original transaction was fraudulent; and if the jury did find, in addition to it, that the consideration was so greatly inadequate as to shock the conscience, the appellants were not injured by the charge complained of.

8. Opinions of witnesses upon a mental condition are admissible in evidence, but such opinions are inadmissible to prove the legal capacity of a party to perform an act which is the subject of controversy. Brown v. Mitchell, 88 Texas. 363. The objection to the testimony of the wit-

ness Abernethy, made the basis of appellants' thirteenth assignment of error, is not that his opinion was inadmissible to prove the legal capacity of appellee to perform any act, nor that it was not competent upon the question of appellee's mental condition, but it is that the conversations upon which the witness based his opinion occurred long after the transaction upon which this suit is brought had been completed.

The witness William Rose testified as follows: "I have known the plaintiff, J. M. Houston, during all his life. I was working in the saloon in Gonzales in 1896, 1897, and 1898 which J. M. Houston constantly visited, and was therefore in position to know his habits regarding drinking of intoxicating liquors; he was drunk all the time in October, 1896, and at other times. He was an habitual drunkard, and this fact was notoriously and generally known in and around the town of Gonzales. During the month of October, 1896, and the fall of 1896 and 1897, J. M. Houston was very absent minded and forgetful; he would say one thing and do another; his memory was very defective, and he did not appear to have proper control of his actions." The dates covered by the testimony of this witness included the periods when the original contract was entered into, and the alleged acts of ratification on the part of appellee were performed. The opinion expressed in the testimony just quoted is substantially such as was given by the witness Abernethy as to what his opinion was as to appellee's mental condition from the conversations and transactions had with him after July, 1898, and strongly tends to show that the impaired mental condition, testified to by Rose, as well as other witnesses, of appellee in the years 1896, 1897, and 1898, was the permanent condition and state of his mind. Since the evidence of other witnesses strongly tends to show that appellee's mind was impaired, not only at the time of the original trade, but also at the time of the execution of the various instruments relied upon by appellants for ratification, waiver, and acquiescence, it was proper to show by the witness Abernethy, who had known J. M. Houston all his life, and had frequent consultations and conversations with him after July, 1898, the real condition and state of his mind, not only at the time of the original transaction, and when various acts claimed to be in ratification of it were made, but down to the day of the trial, in order that the jury might determine whether or not such mental condition was merely the temporary influence of liquor, or a permanent fixed mental condition resulting from the constant and excessive use of it. We are of the opinion, therefore, that the objections made by appellants to the testimony of the witness Abernethy were properly overruled by the court.

There is no error in the record presented to us by the brief of appellants which requires a reversal of the judgment in this case, and it is therefore affirmed.

*Affirmed.*

Writ of error refused.

Fly, Associate Justice, did not sit in this cause.