The TEXAS WORKERS' COM-
PENSATION INSURANCE
FACILITY, Appellant,

v.

PERSONNEL SERVICES, INC., Frederick B. James, and Anthony
Morelos, Appellees.

No. 03–94–00089–CV.

Court of Appeals of Texas,
Austin.

March 29, 1995.

Mary Barrow Nichols [Signed Brief], Harley R. Clark, Jr., R. Scott Placek, Vinson & Elkins L.L.P., Austin, for appellant.

Bogdan Rentea, [Signed Brief], Oren L. Connaway, Austin, for appellees.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The Texas Workers' Compensation Insurance Facility (the "Facility") sought damages from Personnel Services, Inc. ("PSI"), an employee leasing company, alleging that PSI misrepresented its status as the employer of leased workers in order to procure lower workers' compensation insurance rates for its client companies. The trial court found that PSI had misrepresented that the leased workers were its employees, when in fact the employees remained under the control and direction of PSI's client companies. Nevertheless, the court rendered a take-nothing judgment in favor of PSI based on the affirmative defenses of waiver, ratification, and estoppel.[1] The Facility complains of this ruling in fourteen points of error. PSI brings one cross-point urging that the trial court erred in finding that the leased workers were not PSI's employees. We will reverse the trial court's holding that waiver, estoppel, or

---

1. The trial court's conclusion that "PSI did not commit fraud against [the Facility]" is at odds with the court's other findings and conclusions. To harmonize the trial court's findings and con- clusions, we interpret the trial court's statement to mean that the Facility was barred from recovering for PSI's fraud based on PSI's affirmative defenses.

ratification bar the Facility's recovery and will overrule PSI's cross-point.

## BACKGROUND

Concerned that the staff leasing industry permitted certain businesses to avoid paying proper rates for workers' compensation insurance, the former State Board of Insurance (now the Department of Insurance) amended its rules in October 1991 to change the definition of employment as that term is used to calculate workers' compensation premiums in an employee leasing arrangement ("old rule 9"). *See* 16 Tex.Reg. 5206 (1991).[2] In cause No. 91–16599, numerous staff leasing companies, including PSI, challenged the Board's authority to enact old rule 9. The trial court temporarily enjoined the application of the rule, holding that the staff leasing companies had shown a probable right of recovery on the theory that the rule affected coverage and thus exceeded the Board's authority.[3] In that proceeding, the Facility filed a counter-claim against the staff leasing companies, alleging fraud among other causes of action. The Facility's counter-claim against PSI was severed into this cause No. 91–16599–B and tried to the court.

At all times pertinent to this lawsuit, the Facility was the insurer of last resort for employers unable to obtain workers' compensation coverage through private insurance companies.[4] The Facility was required to provide insurance coverage for any risk rejected by the voluntary market if that risk appeared to be "in good faith entitled to insurance." Tex.Ins.Code Ann. art. 5.76–2,

§ 4.02(b) (West Supp.1995). "Good faith" is defined as "honesty in fact in any conduct or transaction." *Id.* art. 5.76–2, § 1.01(8), art. 5.76–4(d). The trial court concluded that PSI had a statutory duty to be honest in any conduct or transaction with the Facility.

## WORKERS' COMPENSATION SYSTEM

Two factors are used to account for risk in the premium calculation for workers' compensation insurance: (1) *employees* are classified according to the risks involved with the work performed (e.g., roofers are assigned a higher risk factor than carpenters); and (2) the *employer* is rated according to its history of claims filed. The employer's rating based on its loss history is called an *experience modifier.* An employer with few claims will have a better experience rating and pay lower premiums than an employer with many claims and a poor experience rating. This classification of employers operates as an incentive to promote safety and also assigns costs of coverage based on the historical workplace risk encountered. The employer with a good loss history receives a *credit modifier,* i.e., a multiplier less than 1.0 that reduces the premium for workers' compensation insurance. The employer with frequent job-related claims is penalized and is assigned a multiplier greater than 1.0, or *debit modifier,* which increases the standard premium. A new business with no loss history is assigned the neutral modifier of 1.0 and pays the standard premiums.

Premium rates based on employee job classification are listed in the *Texas Basic*

---

2. These rules are contained in the *Texas Basic Manual of Rules, Classifications and Rates for Workers' Compensation and Employers' Liability,* promulgated by the Department of Insurance. Although the rules are not published in the Texas Register, the Department of Insurance gives notice through the Register when new rules or changes to rules are proposed. Tex.Ins.Code Ann. § 5.96 (West Supp.1995).

Old rule 9 provided in part:
A standard workers' compensation policy purchased by a client company provides workers' compensation coverage for all workers of the client company, including its leased workers. A standard workers' compensation policy purchased by an employee leasing firm provides workers' compensation coverage only for workers that are not leased to a client company.

3. The trial court's ruling in cause No. 91–16599 was appealed to this Court, but the appeal was dismissed after the Board withdrew old rule 9.

4. Although created by statute, the Facility is a nonprofit, unincorporated association of insurers that operates as a governmental body only for purposes of the Open Records and Open Meetings Acts. Tex.Ins.Code Ann. art. 5.76–2, §§ 2.01, .11 (West Supp.1995). The Facility stopped writing workers' compensation insurance on December 31, 1993. See Act of Aug. 25, 1991, 72d Leg., 2d C.S., ch. 12, § 18.24, 1991 Tex.Gen. Laws 362, 362. On January 1, 1994, the Texas Workers' Compensation Insurance Fund became the insurer of last resort for workers' compensation insurance in Texas. Tex.Ins.Code Ann. art. 5.76–4 (West Supp.1995).

*Manual of Rules, Classifications and Rates for Workers' Compensation and Employers' Liability.* The employer's work force is classified according to this schedule to determine the standard premium. This standard premium amount is then multiplied by the employer's experience modifier.

Before November 1992, the Department of Insurance relied on employment status to identify the appropriate loss history and experience modifier for calculating a worker's compensation premiums.[5] The employee leasing industry saw an opportunity to offer relief to businesses penalized for excessive claims: for a fee, the leasing company would "employ" the workers and then "lease" them back to the client company. For example, assume an employee leasing company, as a new business, has a modifier of 1.0 while the client company has earned a debit modifier of 2.0. If the client company applies as the employer, it will pay twice the standard premium for insurance on its workers. If the leasing company applies to the Facility as the employer of the same workers, which it then leases to the business with the history of bad claims, the leasing company is charged only the standard premium. The employee leasing arrangement reduces the insurance premium by fifty percent, but also subverts the Department's scheme to include the risk factor of a hazardous workplace in the insurance rate.

## PSI'S FRAUD AND ITS AFFIRMATIVE DEFENSES

The first question presented in this appeal is whether PSI legally or illegally thwarted the Department's rate-making scheme for workers' compensation insurance, causing the Facility to provide insurance in excess of the risk for which it received premiums. If we determine that PSI's employee leasing scheme was fraudulent, we must ask whether the Facility had sufficient knowledge of the fraud to bar the Facility's recovery of damages. PSI insists that its staff leasing business was not fraudulent but merely took advantage of a "legal loophole." Furthermore, it argues that the Facility knew that PSI, like most staff leasing companies, was not the actual employer of its leased workers. By providing insurance when PSI represented that it was the employer and by renewing the policies year after year, PSI argues that the Facility ratified the arrangement, waived its complaints, and is now estopped from recovering for PSI's fraud, if any. The Facility responds that it had only general knowledge of the nature and activities of the staff leasing industry and PSI, and that this general knowledge does not operate to bar its recovery for PSI's specific fraud, which exposed the Facility to risks in excess of the premiums received.

Before the enactment of new rule 9 in November 1992, employer status determined the proper experience modifier to apply in calculating workers' compensation premiums; this system exposed the entire workers' compensation program to potential abuse by employee leasing arrangements.[6] Although this "loophole" existed under old rule 9, the loophole was legal only for those who truly exer-

---

**5.** When old rule 9 was enjoined, the Department abandoned employment as a guiding factor for calculating premiums in an employee leasing arrangement. New rule 9 was drafted to prevent employee leasing arrangements from circumventing the payment of proper premiums *without reference to who is the employer:* the client company's modifier is used for leased workers regardless of their legal employment status. In fact, the status of the staff leasing company and client company as co-employers for workers' compensation purposes was subsequently recognized by statute. Tex.Rev.Civ.Stat.Ann. art. 9104, § 11(c) (West Supp.1995).

**6.** The National Council on Compensation Insurance, Inc. recently published a report on premium fraud in the workers' compensation market:

> The most significant problem associated with employee leasing is the undermining of the experience rating system.... One consequence of this practice is that unsafe businesses get discounted premiums which are then shifted, through increased rates, to safer businesses.
>
> * * * * * *
>
> To the extent that intentional cheating [occurs], honest employers pay three times—once for their own workers, a second time through higher rates needed to collect adequate premiums to make up a shortfall created by other employers, and a third time by losing business to competitors who underpay for their insurance coverage.

*Report of the Fraud Advisory Commission of the National Council on Compensation Insurance, Inc.* 12, 19 (1994).

cised sufficient control to become employers. The fact that staff leasing arrangements in general presented opportunities for business to avoid the Department's risk-oriented rate system did not make each leasing arrangement fraudulent. Some leasing companies may have exercised sufficient control over leased workers to qualify as employers if their client companies actually surrendered enough control over these workers to legally avoid their high debit modifiers. However, it was never legal to represent to carriers or to the Facility that the employer status had shifted when in fact it had not. Having designed its employee leasing arrangements to take advantage of a scheme based on employment status, the legality of PSI's actions must be measured by its success in assuming the role of employer.

In *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590–91 (Tex.1964), the supreme court held that the test for determining whether an individual is an employee is *the right to control the details of that person's work*. Many of the contracts between PSI and its client companies were silent on the issue of control; others disguised the real employment relationship. A contract that is a mere sham designed to conceal the true legal relationship between the parties will not control employment status. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex.1992). The trial court properly considered the circumstances surrounding the specific relationships between PSI, the workers, and the client companies to determine who was the employer of the leased workers.

The record is replete with evidence to uphold the trial court's findings that (1) PSI's client companies at all times had and retained the right to control the details of the work of the leased workers, making them employees of the client company and not employees of PSI; (2) PSI misrepresented to the Facility that the leased workers were PSI's employees; and (3) PSI intended that the Facility act upon these material misrepresentations. There is evidence that the client companies controlled the start and stop times of the workers, the sequencing of the tasks they were to perform, as well as the hiring, firing and disciplining of the workers.

Indeed, there is evidence that PSI assured the client companies that they would retain complete control over the leased workers and that the client companies would not have entered into the staff leasing arrangements absent such assurances. Additional evidence reveals that PSI did not supervise its "on-site supervisors," who in reality reported directly to the client companies. Because we agree with the trial court's finding that the leased workers were employees of the client companies and not of PSI, we overrule PSI's cross-point of error.

The question remains whether the trial court properly applied the affirmative defenses of waiver, ratification, and estoppel to bar the Facility's recovery for PSI's fraud. The Facility asserts that the evidence is both legally and factually insufficient to support the trial court's findings in favor of PSI's affirmative defenses. An appellant who challenges the legal sufficiency of the evidence supporting an issue upon which it did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.—Amarillo 1988, writ denied). In reviewing a no-evidence point, we consider only the evidence supporting the finding and disregard all evidence to the contrary. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If there is any evidence supporting the finding, we must overrule the point and uphold the finding.

PSI argues that the Facility is barred because it knew that staff leasing companies generally and PSI specifically were using the employee leasing arrangement to lower premiums paid for workers' compensation insurance. As evidence of this knowledge PSI points to the Board's argument in the hearing to enjoin old rule 9 that without this amendment to its rules, it was "powerless" to address the use of employee leasing arrangements to avoid its rate-making scheme. PSI further argues that this suit is nothing more than an attempt to apply new rule 9 retroactively, i.e., to use the experience modifier of the client company to calculate workers' compensation premiums for leased workers. We

reject these arguments as mere attempts to expand the "legal loophole" rubric.

Before it is barred by the affirmative defenses of estoppel, waiver, and ratification, the Facility must have known specifically that this *particular* leasing company, in its arrangements with these specific client companies, did not assert sufficient control to qualify as the employer of these specific leased workers. The Facility's general awareness that employee leasing arrangements were being used to save money on workers' compensation premiums is not sufficient knowledge to bar recovery for one leasing company's specific fraudulent misrepresentations about the employment status of its leased workers. "One cannot waive or acquiesce in a wrong while ignorant that it has been committed. Current suspicion and rumor are not enough. There must be knowledge of the facts which will enable the party to take effectual action. Nothing short of this will do . . . ." *Wells v. Houston*, 29 Tex. Civ.App. 619, 69 S.W. 183, 188 (1902, writ ref'd); *see also Magnolia Petroleum Co. v. Butler*, 86 S.W.2d 258, 262 (Tex.Civ.App.—Fort Worth 1935, writ dism'd w.o.j.). We further note that the Facility will not be charged with the Department of Insurance's knowledge or awareness of staff leasing arrangements generally or of PSI's operations specifically.

 To establish waiver, PSI had to show that the Facility (1) had an existing legal right, (2) which it knew of at the time of the alleged waiver, and (3) that it intended to relinquish that right. *See Braugh v. Phillips*, 557 S.W.2d 155, 158 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *see also Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987). Waiver is a matter of intention. *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). There is no evidence that with full knowledge of all material facts that constituted the fraud, the Facility clearly manifested its intention to waive its right to recover for PSI's deception. *See Viracola v. Dallas Int'l Bank*, 508 S.W.2d 472, 474–75 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.). Likewise, the Facility did not ratify PSI's actions; there is no evidence that the Facility, possessing full knowledge of PSI's misrepresentation con-

cerning its status as employer, consciously decided to issue or renew insurance policies for PSI's leased workers using PSI's experience modifier. *See LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 699 (Tex. App.—Dallas 1992, writ denied).

 To invoke the equitable doctrine of estoppel requires "clean hands." *Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317 (Tex.App.—Tyler 1985, no writ). Because of the Facility's unique status as insurer of last resort, PSI was under a statutory duty to be honest in its dealings with the Facility. *See* Tex.Ins.Code art. 5–76–2, § 1.01(8) (West Supp.1995). Having misrepresented its status as employer while under a statutory duty to be honest in its dealings with the Facility, PSI is not in a position to use the equitable doctrine of estoppel to shield itself from the results of its fraud. *See El Paso Nat'l Bank v. Southwest Numismatic Inv. Group, Ltd.*, 548 S.W.2d 942, 948–49 (Tex.Civ.App.—El Paso 1977, no writ).

We conclude that there is no evidence that the Facility had specific knowledge that PSI intentionally misrepresented its role as employer of the leased workers in question. Absent specific knowledge of PSI's misrepresentations, the trial court erroneously relied on the Facility's general awareness of the staff leasing industry and its general knowledge of PSI's activities to apply the affirmative defenses of waiver, ratification, and estoppel as a bar to the Facility's recovery. Therefore, the trial court erroneously concluded that PSI did not commit fraud against the Facility. We sustain points of error one through five, ten, and fourteen. Having concluded that no evidence supports the trial court's findings of the Facility's specific knowledge of PSI's activities, we need not address the Facility's remaining points of error.

## CONCLUSION

We reverse the take-nothing judgment in favor of PSI and remand this cause to the trial court for a determination of damages on the Facility's cause of action for fraud.