INTERNATIONAL UNION, UNITED STEEL WORKERS LOCAL NO. 2098, et al., Plaintiffs-Appellants,

v.

INTERNATIONAL SYSTEMS AND CONTROLS CORPORATION, a corporation, formerly Black, Sivalls & Bryson, Inc., a corporation, the United Steel Workers of America, a union, Paul Bartley, Herman Frietsch and Joe Salinsky are Individual trustees of the Pension Trust Fund, Defendants-Appellees.

No. 76–1459.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 20, 1977.

Decided Dec. 15, 1977.

Paul F. Fernald, Oklahoma City, Okl. (E. W. Keller of Keller & Fernald and John C. Corona, Oklahoma City, Okl., on brief), for plaintiffs-appellants.

Landon H. Rowland, Kansas City, Mo. (Danny R. Carpenter, David J. Kornelis, Watson, Ess, Marshall & Enggas, Kansas City, Mo., and Edward E. Soule, Oklahoma

City, Okl., of counsel, Lytle, Soule & Emery, Oklahoma City, Okl., on brief), for defendants-appellees.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY, Chief Judge.*

McWILLIAMS, Circuit Judge.

This case involves the pension plan of a company which ceased doing business, and concerns the rights, if any, of employees who, as of the date of the plant shutdown, had not qualified under the provisions of the pension plan for retirement benefits. On motion for summary judgment, the trial court concluded that under the terms of the pension plan the individual plaintiffs had no right or interest in the pension plan, or the corpus thereof. Accordingly judgment was entered in favor of the defendant company. The plaintiffs now appeal. We affirm.

For a number of years prior to 1969, Black, Sivalls and Bryson, Inc. had a collective bargaining agreement between its Oklahoma City plant and the United Steel Workers of America, its officers, agents and members of Local Union 2098. The particular collective bargaining agreement between the defendant and the Union with which we are here concerned became effective on October 22, 1969, and by its terms continued in effect until October 22, 1972. The collective bargaining agreement included an "Appendix C Pension Agreement," which by its terms was effective October 22, 1969, and remained in effect until midnight, October 21, 1972.

The following provisions of the Pension Agreement have bearing on the present controversy, and are set forth below. The eligibility requirements for pension benefits contained in paragraph 341 of the Pension Agreement provided that:

> Any employee who, at the time of his retirement from employment within the bargaining unit on or after October 22, 1969, shall have had at least fifteen (15) years' continuous service and shall have

attained the age of sixty-five (65) years (unless otherwise provided for in this Agreement) shall be entitled to receive a pension upon his retirement.

The Pension Agreement further provided that the funding of the pension plan would be as follows:

Section 6. Pension Trust

For the purpose of supplying pension benefits herein provided, the Company shall establish a pension trust. The aggregate of the amount of moneys that shall be paid into the pension trust during the term of this Agreement shall not be less than an amount which on a sound actuarial basis shall be estimated to be sufficient to pay the pensions of the employees who shall have become eligible for a pension under this Agreement during such period ending October 21, 1972.

Additionally, and importantly, the Pension Agreement provided that employees who had not met the eligibility requirements for retirement with a pension had no right or interest in any pension trust funds. Specifically, paragraph 362 of the Pension Agreement reads as follows:

> No employee prior to his retirement under conditions of eligibility for pension benefits shall have any right or interest in or to any portion of any funds which may be paid into any pension trust or trusts heretofore or hereafter established for the purpose of paying pensions and no employee or pensioner shall have any right to pension benefits except to the extent provided in this Agreement. Employment rights shall not be enlarged or affected by reason of the foregoing pension provisions.

Although not a part of the Pension Agreement, as such, the collective bargaining agreement between the Union and the defendant recognized certain so-called "Company Rights." One related to the right of the defendant to close its plant. Specifically, section 1 of the collective bargaining agreement reads as follows:

---

* Of the United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

### Section 1. Company Rights

The Management of the Plant and the direction of the working forces inclusive of the right to hire, promote, transfer, and the discharge or discipline for proper and just cause shall be vested exclusivelv with the Company; and the right to relieve employees from duty because of lack of work or other legitimate reason is vested with the Company.

The Union recognizes other rights and responsibilities belonging solely to the Company, prominent among which is the right in good faith to determine the number of plants and their locations and the type and quantity of machine and tool equipment to be used in manufacturing its products.

It is agreed that the above enumerations of management functions shall not be deemed to exclude other functions commonly and properly recognized but not enumerated. The Company agrees that in the administration of its prerogatives, the provisions of the Agreement will apply.

In 1972 Black, Sivalls & Bryson determined to permanently shut down its Oklahoma City plant and it ceased all production in the Oklahoma City plant on Saturday, October 21, 1972. As above indicated, the collective bargaining agreement, and the Pension Agreement incorporated therein, expired by their own terms on October 22, 1972, and at midnight, October 21, 1972, respectively.

The plaintiffs in the present proceeding are the United Steelworkers of America, Local No. 2098, and certain named members of the local. The defendants, in addition to Black, Sivalls & Bryson, hereinafter referred to as the defendant, are the International Systems & Controls Corporation, a successor organization, and certain named individuals who are trustees of the pension fund. As indicated, the individual plaintiffs were employees of the defendant. However, when the defendant ceased doing business on October 22, 1972, none of the individual plaintiffs were eligible for a retirement pension under the eligibility requirements of the Pension Agreement, i. e., none, as of that date, had attained the age of 65 with 15 years of continuous service. The gist of the complaint was that although none of the individual plaintiffs was eligible as of October 22, 1972, to a retirement pension, each nonetheless had a present and vested interest in the pension trust. Attached to the complaint was a copy of the collective bargaining agreement between the Union and the defendant, including the Pension Agreement.

The trial court granted the defendants' motion for summary judgment on the ground that under the terms of the collective bargaining agreement, and more particularly under paragraph 362 of the Pension Agreement incorporated therein, no employee, *prior* to his actual retirement under the conditions of eligibility for pension benefits, had any right or interest in or to pension benefits either under the agreement or pursuant to quasi-contract.

The Pension Agreement with which we are here concerned is noncontributory in nature, in that the employees themselves make no contribution, as such, to the pension fund. Rather, the pension trust is funded by the defendant employer, and the funding arrangement, as provided fur in section 6 of the Pension Agreement, is known as "terminal funding." Under the terminal funding arrangement the defendant made no contribution to the pension trust until such time as a given employee became eligible to retire. Such is in contrast to a "pay as you go" pension plan, where an employer makes periodic contributions to a pension fund in anticipation of the time when an employee will become eligible for retirement. The foregoing discussion simply rounds out the general nature of the pension plan with which we are here concerned, and our recital thereof should not be construed as an indication by us that the terminal funding aspect of the present plan is decisive of the present controversy. In our view, the present controversy is fully resolved by reference to paragraph 362 of the Pension Agreement.

As above indicated, in clear and understandable language paragraph 362 of the Pension Agreement provides that no employee prior to his retirement has any right or interest in or to any pension fund or trust. Such provision, in our view, defeats any claim of the plaintiffs that they are entitled to a recovery under the terms of the Pension Agreement itself. Similarly, that same provision defeats plaintiffs' alternative claim for recovery under quasi-contract, or *quantum meruit* based on unjust enrichment. Our holding in this regard is in accord with several other Circuit Courts of Appeal.

A claim similar to the instant one was made in *Craig v. Bemis Company, Inc.*, 517 F.2d 677 (5th Cir. 1975). In *Bemis* there was a plant closing, and certain of the discharged employees later brought suit against their former employer to recover pension benefits which they claimed were due them either under the company's retirement plan or on a theory of unjust enrichment. The plan in *Bemis* was non-contributory and provided for retirement benefits which would vest only after completing 20 years of credited service and attaining the age of 55. The plan also specifically provided that no benefits were available on termination of an employee's services before such employee was eligible to retire. The trial court in *Bemis* entered summary judgment for the defendant employer. On appeal, the Fifth Circuit Court of Appeals affirmed, and, in holding that the plaintiffs were not entitled to recover either under the pension plan, or on a theory of *quantum meruit*, made the following comment:

Although private, non-contributory pension plans were once viewed as mere gratuities, *see, e. g., Menke v. Thompson*, 8 Cir. 1944, 140 F.2d 786; *Umshler v. Umshler*, 1947, 332 Ill.App. 494, 76 N.E.2d 231; *Magnolia Petroleum Co. v. Butler*, Tex.Civ.App.1935, 86 S.W.2d 258, writ dism'd, it is now generally true that both employers and employees regard pension benefits as a type of deferred compensation, and that an employer who offers a comprehensive retirement program expects the program to be attractive to potential employees and necessarily calculates that 'the cost of an employee's service is greater than the amount currently paid him as wages.' S.Rep.No. 1734, 84th Cong., 2d Sess. 3 (1956). *See Inland Steel Co. v. N.L.R.B.*, 7 Cir. 1948, 170 F.2d 247, cert. denied in part, 1949, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112, aff'd on other grounds (*American Communications Ass'n, C.I.O. v. Douds*), 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925. Once that is said, it is also true that the courts have almost unanimously held, especially where the pension plan in question has been adopted as part of a collective bargaining agreement between an employer and a union, that only those employees who satisfy the conditions of age and service set out in the agreement, that is, those employees whose pension rights have 'vested,' are entitled to pension benefits. *See, e. g., Matthews v. Swift & Co., supra*, 5 Cir., 465 F.2d [814] at 818; *Knoll v. Phoenix Steel Corp.*, 3 Cir. 1972, 465 F.2d 1128, 1131, cert. denied, 1973, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257; *Schneider v. Electric Auto-Lite Co.*, 6 Cir. 1972, 456 F.2d 366, 373. The rationale for the rule was stated concisely in *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 1970, 77 Wash.2d 911, 918, 468 P.2d 666, 672: "[i]t may seem unfair to declare a pension to be compensation and then deny an employee who is not at fault the fruits of this compensation. But the extent of this compensation is limited by the terms of the contract . . . ." Once a pension plan is deemed to be part of an employment contract, it follows that the explicit terms of the contract govern that portion of the employment relation. *Id.* at 680.

Also in line with our disposition of the case is *Knoll v. Phoenix Steel Corporation*, 465 F.2d 1128 (3d Cir. 1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 941, 35 L.Ed.2d 257 (1973). In *Phoenix* there was again a plant closing. The pension plan there involved had a specific provision concerning the disposition of the fund upon termination, which, in effect, excluded employees with

less than 15 years continuous employment from receiving anything from the fund. Certain employees, with less than 15 years continuous service as of the date of the plant closing, brought suit to participate in the distribution of the pension fund based both on the provisions of the agreement itself and on a *quantum meruit* basis. As concerns the latter claim, the Third Circuit Court of Appeals, in affirming the trial court's granting of summary judgment for the defendant employer, commented as follows:

> Appellants' second contention is that they were entitled to recover on a *quantum meruit* theory of recovery as against Phoenix. The gist of appellants' position is that they relied upon the pension plan as partial consideration for their continued services to the company, yet those employees who had not been employed for 15 years continuous service as of December 31, 1960, will receive nothing from the Fund. The direct answer to this argument is that those appellants who had not had fifteen years continuous employment, and who will not be receiving pensions, are barred from those benefits by the terms of the Pension Fund itself. These terms were known to them when they became employees. *Id.* at 1131.

See also in this regard *Schneider v. Electric Auto-Lite Company*, 456 F.2d 366 (6th Cir. 1972), where the Sixth Circuit held that employees who as of the date of the plant's permanent closing had not achieved the age and service requirements required by the pension agreement were not entitled to any pension benefit.

Being in accord with the rationale of the cases above referred to, we conclude that the trial court in the instant case did not err in granting summary judgment for the defendant company. Accordingly, the judgment is affirmed.