Court of Civil Appeals of Texas. Fort Worth.
Sept. 6, 1935.

Rehearing Denied Oct. 11, 1935.

⊛⟿52

W. H. Francis, A. S. Hardwicke, and Russell Surles, all of Dallas, and Shropshire & Bankhead, of Weatherford, for appellant.

Preston Martin, of Weatherford, and Clark & Clark, of Fort Worth, for appellee.

BROWN, Justice.

D. H. Butler, appellee, had been an employee of appellant, Magnolia Petroleum Company, for many years, but less than twenty, and was retired from service on June 1, 1930, and before he became sixty-five years of age.

While appellee was in appellant's employ, it created at its own expense, without the aid of financial support from any of its employees, a plan for the benefit of its faithful employees who might be retired from service. The plan was adopted in 1918, and is as follows:

"(a) Regular Retirement: All men who have reached the age of sixty-five years and women fifty-five years and who have been twenty years or longer in the service shall be retired on a regular allowance, unless, in individual cases, at the request of the employee, some later date be fixed by the Board of Trustees for such retirement; in which event, such employee, who has at the time of retirement been in the service of the company twenty years or longer, shall be retired on a regular allowance.

"(b) Retirement at Request of Employee or at Discretion of Board: Any man who has reached the age of fifty-five years, or any woman fifty years, who has been thirty years or longer in the service, or any man who has reached the age of sixty years, who has been twenty years or longer in the service, may be retired on a regular allowance, either at his or her request, with the approval of the Board, or, without the request of the employee, at the discretion of the Board.

"(c) Retirement at Discretion of Board: Any employee who has been ten years or longer in the service and who by physical examination is shown to be permanently, totally incapacitated for service, or whose retirement on account of advancing years is, in the judgment of the Board, advisable, may, at the discretion of the Board, be retired and granted a regular or a special allowance. Section 2. Amount of Payments.

"(a) The payments for regular allowances which the Board may authorize under this plan shall be, as follows:

"For each year of active service an allowance of two per cent of the average

annual pay during the ten years next preceding retirement; but no regular allowance shall be less than $300.00 per annum or more than seventy-five per cent of such average annual pay. Illustration:

"If the retired employee, reaching the age of sixty-five years, has been in the employ of the company twenty-five years and his average annual salary during the last ten years of his employment has been $1,200.00, or $100.00 per month, his annual allowance or annuity would be twenty-five times two per cent of his average salary—that is, fifty per cent of $1,200.00 equaling $600.00 per year, or $50.00 per month.

"(b) The amount and duration of each special allowance shall be determined by the Board.

"Section 12. The annuities and benefits granted employees in accordance with this plan have no relation whatever to the determination of the amount of wages or salaries to be paid by this company, but are granted as a voluntary reward for and in appreciation of faithful and efficient service, and as an incentive to further service, applicable to all employees, including officials, on equal terms. This plan shall not be construed, however, as giving any employee the right to be retained in the service of the company, or any right or claim to an annuity or allowance after discharge from the service of the company unless the right to such annuity or benefit accrued prior to such discharge.

"The company reserves the right at any time, at its discretion, to withdraw or modify this plan either as to annuities or benefits."

In 1926, appellant changed its status from that of a voluntary joint stock association, operating under a declaration of trust, to that of a private corporation, and adopted the following plan for its retired employees:

"Annuities—Section 1. Eligibility. All employees of this company are eligible for retirement on annuities under the following conditions:

"(a) Regular Retirement: All men who have reached the age of sixty-five years and women fifty-five and who have been twenty years or longer in the continuous active service of this company shall be retired on a regular allowance unless in individual cases some later date be fixed by the Board of Directors for such retirement.

"Optional or Discretionary Retirement: Any man who has reached the age of fifty-five years, or any woman who has reached the age of fifty years, who has thirty years or longer in the continuous active service of the company, or any man who has reached the age of sixty years who has been twenty years or longer in the continuous active service of the company, may be retired on a regular allowance, either at his or her request, with the approval of the Board of Directors, or without the request of the employee, at the discretion of the Board of Directors.

"Section 2. Payments. (a) Amount of Payments. The amount of payments for all such regular allowance which the Board authorizes shall be as follows:

"For each year of continuous active service an allowance of two per cent of the average annual pay during the five years next preceding retirement; but no regular allowance shall be in excess of seventy-five per cent of such annual pay, except that for the first year from the date of retirement the annuitant shall receive an amount equivalent to the full salary in effect at the time of retirement.

"(b) Method of Payments: Annuities are to be paid monthly by check to the order of the annuitant and mailed to his or her address.

"Part 4, General Rules—Section 2:

"The annuities and benefits herein provided for are voluntary grants by the company and this plan shall not be construed as giving any employee the right to be retained in the service of the company, or any right or claim to an annuity or death benefits to his beneficiaries after discharge from the service of the company.

"The company reserves the right at any time at its discretion to withdraw or modify this plan, either as to annuities or death benefits. The above plan is to go into effect as of July 1, 1926."

Butler was retired as an employee in 1930, and on May 22, 1930, at a meeting of the board of directors of appellant, the following resolution was passed:

"Whereas, David H. Butler, age sixty-four, an employee of the sales department of Magnolia Petroleum Company for approximately seventeen years, is in ill health and physically not able to continue in the employment of the company.

"Now, therefore, be it resolved, that the said David H. Butler is hereby specially

retired from the service of the company with a gratuity to be paid him of $861.35, or $71.78 per month, payable monthly, for a period of one year from June 1, 1930; such monthly payments to terminate at any time the said David H. Butler shall die, if his death occurs prior to one year after June 1, 1930."

Appellant paid appellee, under the foregoing conditions, $71.78 per month for one year from June 1, 1930, issuing to appellee its check semimonthly for the sum of $35.89, which checks appellee accepted and cashed, without complaint, or protest. At the end of the stipulated year, the payments were discontinued, and appellee brought suit in the district court of Parker county, alleging his long service as an employee of appellant; the establishment by appellant of a pension system for its faithful employees; that such system was held out as an inducement to its employees to remain in its employ; that he relied upon the promises and inducements provided for in the system, and refrained from taking other employment, where he could have increased his earnings; that in 1930, while appellee was in the regular employ of appellant, "said defendant recommended, advised and suggested that this plaintiff retire from the services on the pension, as aforesaid, and so stated and represented to him that it intended to place the agency at Sweetwater (where appellee was agent in charge) on a commission basis and that if he would retire, it would pay to him a pension during the balance of his lifetime on a basis of 2% per year for the length of time he had served said defendant, or 35% of his average salary, which per cent would entitle this plaintiff to a pension of $71.00 per month. That relying upon said promises and representations of said defendant, the same being material inducements to him, this plaintiff agreed to retire with the expressed agreement and contract on the part of the said defendant that in consideration therefor it would pay to him said pension in the sum of $71.00 per month during the balance of his lifetime."

Appellee alleged his voluntary retirement on June 1, 1930, under the circumstances alleged; and that in keeping with such agreement, the appellant began paying him a pension of $71 per month, and continued such payments until June 1, 1931, when appellant ceased making such payments and breached its contract. He sued for $1,704 alleged to be past due; for $71 per month over a period of 11.1 years (his life expectancy) in the sum of $9,457.20, or in the alternative for a lump sum, less a discount of 6 per cent. per annum.

As an alternative plea, appellee alleged that appellant was guilty of fraud in inducing him to retire, under the facts and circumstances shown; that he would have continued in the service but for such fraudulent promises; and prayed for $29,232, the amount which he alleges he would have earned in appellant's employ.

Many exceptions are addressed to appellee's pleading, but believing that our conclusions correctly dispose of the controversy, we shall endeavor to shorten the opinion by discussing what we consider the controlling questions before us.

Appellant answered, alleging that if any of its officers or employees made any such contract with appellee, same was done without authority and is not binding on appellant; that such a contract is ultra vires; and is violative of the statute of frauds; and such contract is without consideration to support it.

Appellant specially pleaded the two pension plans heretofore noted; the resolution passed by the board of directors, allowing appellee a pension for only one year; that appellee had not been in its employ for twenty years and was not sixty-five years old when he retired; that appellee had been in ill health for some time prior to his retirement and because of such fact had requested to retire on an annuity; that the board of directors passed a resolution retiring appellee on a monthly pension, to be paid for one year, from June 1, 1930; that such pension was a pure gratuity from appellant; that appellee contributed nothing to the pension and gratuity fund, which was provided and administered at appellant's expense; that appellee was furnished a copy of the resolution fixing his gratuity at and for one year, from and after his retirement, and was paid such sum, and made no complaint, but retained and accepted the benefits of the act of the board.

Replying to appellant's answer, appellee alleged that appellant "ratified and confirmed said contract and agreement and accepted the benefit thereof and is estopped from now claiming that the acts of said agent in making said contract and agreement was without authority, and ultra vires." Further, that appellant had waived the matter of appellee's services with the company, being less than twenty years, and

his age being less than sixty-five years, and had made an exception in appellee's case to bring about his retirement at such time, and that appellant is estopped to urge such defenses, having ratified the acts of its agent who so waived.

The case being tried to a jury, the trial court submitted a charge containing some fourteen special issues, together with six specially requested issues presented by appellant.

The jury found: (1) That appellant held out to appellee the promise of an annuity, or pension, as an inducement for appellee to remain in its employ. (2) That this was a material inducement. (3) That appellee relied upon it. (4) That one J. C. Stephens, in March, 1930, represented to appellee that if he would then retire, he would be paid an annuity, or pension, of $71.89 per month during the balance of his life. (5) That appellee relied upon Stephens' representations. (6) That same constituted a material inducement to appellee to then retire. (7) That Stephens and appellee entered into an agreement, in 1930, whereby appellee was to retire from active service with appellant and be paid an annuity, or pension, of $71.89 per month during the balance of his life. (8) That after such agreement was made between Stephens and appellee, appellant ratified the same. (The eighth issue asked the jury to find whether the agreement was ratified "in whole or in part," to which the jury answered, as directed, "Yes.") (9) That "Stephens agreed to waive the requirements as to age for period of service provided in said annuity plan provided the plaintiff Butler would retire at that time." (10) "Do you find from a preponderance of the evidence that the defendant, Magnolia Petroleum Company, after the said J. C. Stephens had agreed with plaintiff, Butler, to waive the requirements as to age and the period of service in said annuity plan, ratify said agreement in whole or in part?" To which the jury answered, "Yes." (11) That appellee's life expectancy is 11.10 years. (12) That the representations made by Stephens were untrue. (13) That appellee has been damaged by the representations. (14) That his damages are $9,575.75.

In answer to defendant's issues, the jury found that appellee contributed nothing toward the cost of creating or administering the benefit fund; that appellee did not voluntarily make application to the board of directors for retirement from service on a lifetime pension; that appellant's board of directors did not authorize the retirement of appellee from its service on an annuity for the balance of his life; that the gratuity plan adopted July 1, 1926, provided that it should be administered under the direction of appellant's board of directors; that the July, 1926, plan provided that appellee must be sixty-five years of age, and must have been in continuous employ for twenty years, or longer, in order to be entitled to retirement on a regular allowance for life; that appellee was employed by appellant by the day only; and that appellant had the right to discharge appellee, with or without cause, and be responsible to appellee only for such wages as he had earned up to his retirement.

On the verdict returned, the trial court rendered judgment for appellee against appellant, decreeing specific performance of the contract to pay appellee $71.89 per month for his lifetime; rendered judgment for $2,516.25, the amount found by the court then due and unpaid, and judgment for appellee awarding recovery from appellant of $71.89 per month beginning with June 1, 1934, and continuing so long as appellee lives, with 6 per cent. interest from the date of each past-due installment.

It is undisputed that the benefits provided by appellant are mere voluntary grants, and that appellee contributed nothing toward the benefit fund, and nothing toward its administration, and that the plan provides that it "shall not be construed as giving any employee the right to be retained in the service of the company, or any right or claim to an annuity * * * after discharge from the service of the company."

The plan provides also: "The Company reserves the right at any time at its discretion to withdraw or modify this plan, either as to annuities or death benefits."

It is undisputed that appellant could discharge, or cause appellee's retirement, at will—appellee executed an instrument so providing, July 30, 1927.

It is undisputed that the plan is under the control of the board of directors, and that an employee "may be retired on a regular allowance, either at his or her request, with the approval of the Board of Directors, or without the request of the employee, at the discretion of the Board of Directors."

■ J. C. Stephens, with whom appellee claims he had his conversation and all

dealings, leading up to this controversy, was division manager of appellant at Fort Worth, Tex., having supervision of sales that were carried on by the employees in such district, supervision of the employees in the district, and the direction of their work. He had no authority to employ or discharge. He only recommended. He was not one of appellant's directors, and had no part in administering the pension plan. These facts must of necessity have been known to appellee. Appellee could not deal blindly with Stephens. It was his duty to ascertain the extent of Stephens' authority.

On May 28, 1930, Stephens wrote appellee as follows:

"On the first of June we are arranging to check Mr. Andy Glenn in as agent at Sweetwater. We are attaching hereto copy of resolution passed by the Board of Directors of the Magnolia Petroleum Company which is for your information.

"We will take it up with the Board on May 1, 1931, as the retirement is only for one year, but they are usually extended, if the employee is still living, for additional periods by resolution of the Board of Directors."

This letter, with the copy of resolution (noted above) awarding appellee a gratuity for one year, constitutes the entire written evidence of what occurred between Stephens and appellee.

On May 15, 1931, Mr. Gatton, manager of the Fort Worth division, wrote appellee that the board of directors had discontinued his gratuity, and appellee wrote Stephens as follows, on May 17, 1931:

"Dear Sir: I have received notice from Mr. Gatton that the Board of Directors had cut off my allowance, effective June 1st. With the assurance you gave me that this would last for life I have rested easy on that line, and made my plans accordingly.

"I write you this letter hoping you might use your influence in them continuing the allowance as I have been expecting."

Stephens testified that he both recommended that appellee be given the gratuity for life and that it be continued, after the first year, but the board did not see fit to follow his recommendation.

It must be borne in mind that appellant has provided for its employees a voluntary gratuity, to the maintenance and administration of which the employees pay nothing.

■ The rule is well established that where the fund is contributed entirely by the employer and administered at his expense, the terms of such plan control the rights of the parties so long as they are executed in good faith, and the by-laws, if any, and regulations governing the creation and administration of the fund will be given the construction placed upon them by those upon whose shoulders rests the responsibility of administering the fund, unless such construction conflicts with law and public policy. 39 Corpus Juris p. 248, § 363.

There is nothing in this record tending to establish lack of good faith in dealing with appellee, and the manner in which appellee's case was handled by appellant is not contrary to any law existent, neither is it violative of public policy. 39 Corpus Juris p. 250, § 369.

The Master in the Parable of the laborers quotes the employer as saying: "Is it not lawful for me to do what I will with mine own?" St. Matthew, c. 20, v. 15.

There is no finding by the jury that Stephens had either actual or apparent authority to make the contract upon which appellee relies. The trial court submitted no such issues to the jury, and we find no evidence sufficient to support such issues.

Appellee pitches his right to recover on the theory that Stephens made the contract and agreed, with appellee, to waive the age and time of continuous service requirements, and that the corporation for whom Stephens was an agent ratified the making of the contract and the waiver on the part of its agent.

We find no testimony tending to support the two issues of ratification by the principal. In fact, the entire record discloses that there was no such ratification.

■ To effect waiver, or ratification, or both, it must be shown that the party sought to be held was placed in possession of all of the facts and with such knowledge at hand so acted as to evidence an intention to ratify an otherwise unauthorized act, or to waive the matter, right, contractual provision, or defense upon which such party could have relied, but for such waiver.

■ No such burden is met in this case, and the findings of the jury in answer to

issues 8 and 10 are without evidence to support them.

The trial court gave the jury no measure of damages, but submitted an issue permitting the jury to find from a preponderance of the testimony "what amount of damages * * * Butler has sustained on account of said representations so made to him by the said Stephens." To this the jury made answer: "$9,575.75."

The trial court, evidently, ignored this finding and proceeded to render judgment for Butler, awarding him recovery of a sum equal to all of the monthly installments found by the court to be past due and unpaid, decreeing specific performance of the contract and rendering judgment for Butler against appellant for $71.89 monthly, beginning with June 1, 1934, and continuing each month during the balance of Butler's lifetime.

If appellee were entitled to recover, it is evident that his recovery would be limited to the establishment of his contract and the accrued monthly payments, and the trial court was without authority to render judgment for monthly installments not yet accrued.

The case appears to have been as fully developed as the available evidence permits.

For the reasons noted, the court is of the opinion that the judgment of the trial court should be reversed and judgment here rendered for appellant, Magnolia Petroleum Company; and it is so ordered.

Reversed and rendered.