**TEXAS COMMISSION OF LICENSING AND REGULATION, Appellant,**

v.

**MODEL SEARCH AMERICA, INC., Appellee.**

No. 03–96–00349–CV.

Court of Appeals of Texas, Austin.

June 12, 1997.

Dan Morales, Atty. Gen., Dewey E. Helmcamp, III, Asst. Atty. Gen., Austin, for Appellant.

Thomas Forbes, Austin, for Appellee.

Before POWERS, ABOUSSIE and JONES, JJ.

POWERS, Justice.

The Texas Commission of Licensing and Regulation appeals from a declaratory judgment given by the trial court in an action brought by Model Search America, Inc. (MSA), a corporation organized and existing under the laws of the State of New York. We will reverse the judgment and order the cause dismissed for want of subject-matter jurisdiction.

## THE CONTROVERSY

The Commission regulates "talent agencies" under the provisions of the Texas Talent Agency Act, Tex.Rev.Civ. Stat. Ann. arts. 5221a–9; 9100 (West Supp.1997). Section 1(6) of the Act defines "talent agency" to mean one who "engages in the business of obtaining or attempting to obtain employment for artists. The term includes an entity that counsels or directs an artist in the development of the artist's professional career." Article 5221a–9, § 1(6). The Commission has by rule construed the statutory definition to include a "corporation . . . that advertises a model call or casting call, or implies in any advertisement that employment as an artist or representation by an agency might be obtained by responding to such advertisement." 16 Tex. Admin. Code § 78.20(b). A "talent agency" may not operate in the State of Texas without a certificate of registration and without complying with the Act. The Act prohibits the charging of a "registration or advance fee" as a condition of registering an applicant or representing a model. *See* Tex.Rev.Civ. Stat. Ann. arts. 5221a–9 § 2(a), (b).

MSA invites aspiring models to conventions where they receive training and practical advice about the modeling business and opportunities to meet modeling agents from across the country. For its services, MSA

charges an advance fee of $245 per person and requires would-be models to sign a contract that entitles MSA to a five-percent commission on the person's earnings for a five year period. MSA does not guarantee anyone employment as a model, nor does MSA itself employ models.

MSA does not presently have a certificate of registration authorizing the corporation to operate in Texas. Believing it did not require a certificate of registration because its manner of operation did not come within the statutory definition of a "talent agency" or the definition in Title 16 of the Texas Administrative Code, section 78.20(b), MSA met with the Commission's general counsel and director of enforcement to express MSA's views. The general counsel and director expressed an opposite view and stated to MSA their opinion that the corporation's manner of operation brought it within the definition of "talent agency" and thus required the corporation to obtain a certificate of registration.

MSA sued the Commission in district court, alleging the matters set out above and praying for declaratory judgment that (1) MSA was not required to obtain a certificate of registration and (2) the Act and the Commission rules promulgated thereunder were inapplicable to MSA. MSA founded its claims for declaratory relief upon the causes of action authorized in the Uniform Declaratory Judgments Act and section 2001.038 of the Texas Government Code.[1]

The district court awarded declaratory relief as follows: (1) MSA is not legally required to obtain a certificate of registration as a talent agency; (2) the Act is inapplicable to MSA; and (3) MSA is not a talent agency as that term is defined in the Act. The judgment declares that "all other relief not expressly granted in this judgment is denied." The judgment does not purport to decide MSA's suit for declaratory judgment regarding the applicability or validity of the Commission's rule defining a "talent agency" as set out in Title 16 of the Texas Administrative Code, section 78.20(b).

## DISCUSSION AND HOLDINGS

In its appeal, the Commission contends the district court did not have subject-matter jurisdiction for several reasons. We will refer to them in order.

 The separation of government powers mandated in the State constitution forbids a court to review the actions of an administrative agency unless the legislature has, in a proper statute, authorized a cause of action for that purpose or the plaintiff complains the agency action is ultra vires or unconstitutional in its effect upon the plaintiff or his property.[2] MSA rejoins that the Declaratory Judgments Act constitutes statutory authority for the court's review of the agency action in this instance. We disagree. While the Declaratory Judgments Act authorizes a district court to award a remedy not otherwise available at common law, the statute does not itself create jurisdiction in the district court to review an agency action not otherwise reviewable. *See North Alamo Water Supply Corp. v. Texas Dept. of Health,* 839 S.W.2d 455, 458 (Tex.App.—Austin 1992, writ denied); *Southwestern Bell*

---

1. The Uniform Declaratory Judgments Act provides that

> [a] person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem.Code Ann. § 37.004. The purpose of the uniform act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002.

Section 2001.038 of the Texas Government Code authorizes a district court in Travis County to determine the "validity or applicability or a rule" when "the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff;" provided the action "may not be used to delay or stay" certain hearings and the state agency is made a party to the action. Tex. Gov't.Code Ann. § 2001.038(a) & (e).

2. *See e.g., Firemen's & Policemen's Civil Serv. Comm'n v. Blanchard,* 582 S.W.2d 778 (Tex. 1979); *Westheimer Indep. School Dist. v. Brockette,* 567 S.W.2d 780 (Tex.1978); *Stone v. Texas Liquor Control Bd.,* 417 S.W.2d 385 (Tex.1967); *Chemical Bank & Trust Co. v. Falkner,* 369 S.W.2d 427 (Tex.1963).

*Tel. Co. v. Public Util. Comm'n of Tex.*, 735 S.W.2d 663, 667–68 (Tex.App.—Austin 1987, no writ). And MSA does not suggest what constitutionally protected interest is injured by the agency action referred to above. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945), to which MSA refers us, obviously involves a constitutionally protected interest—a taxpayer's rights in his property. In contrast, a foreign corporation such as MSA possesses no right to transact business in Texas without complying with all statutory conditions that pertain to the matter. *General Motors Acceptance Corp. v. McCallum*, 118 Tex. 46, 10 S.W.2d 687, 689 (1945).

■ We also believe MSA's disagreement with the Commission's interpretation of the Act did not "affect" MSA's rights, status, or other legal relations with the immediacy and concreteness contemplated by the Uniform Declaratory Judgments Act. The trial court had before it no final agency order; indeed the court had before it no order at all, but only MSA's allegation that the agency's general counsel and director of enforcement told MSA that according to their interpretation of the Act MSA was obliged to obtain a certificate of registration. So far as the pleadings and evidence indicate, no public officer or private person has attempted to enforce against MSA the civil or criminal consequences of operating a talent agency in the state without a certificate of registration. *See* art. 5221a–9 §§ 13–15; *see also Sun Oil Co. v. Railroad Comm'n*, 158 Tex. 292, 311 S.W.2d 235 (1958)[3]; *Jester Dev. Corp. v. Travis County Appraisal Dist.*, 775 S.W.2d

464, 467 (Tex.App.—Austin 1989, no writ); *Walls Regional Hosp. v. Altaras*, 903 S.W.2d 36, 41 (Tex.App.—Waco 1994, no writ).

■ The foregoing impediments to declaratory relief are not avoided by a claim that the opinion given by the Commission's general counsel and director of enforcement is ultra vires. They had the undoubted authority to interpret the Act's provisions and to make a decision in that regard. That they "might decide 'wrongly' ... does not vitiate" their authority to make a decision. *North Alamo Water Supply Corp.*, 839 S.W.2d at 459.

For the foregoing reasons, we hold the district court lacked subject-matter jurisdiction under the Uniform Declaratory Judgments Act.

■ As mentioned previously, the trial court declined to award declaratory relief respecting the definition of "talent agency" found in the Commission's rules at Title 10 of the Texas Administrative Code, section 78.20(b). MSA has not attacked this aspect of the judgment by cross point in this court and prays only for affirmance of the judgment below. Nor does the record show MSA contended in the trial court that the court erroneously denied declaratory relief respecting the agency rule. *See Warren v. Triland Inv. Group*, 779 S.W.2d 808, 809 (Tex.1989); *Ayotte v. Central Educ. Agency*, 729 S.W.2d 385, 387–88 (Tex.App.—Austin 1987, no writ). Because the trial court did not purport to exercise jurisdiction under section 2001.038 of the Texas Government Code, and MSA has not complained of the court's refusal of declaratory relief in that

---

**3.** *Sun Oil* illustrates the point eminently. There the Texas Railroad Commission ordered that the shipping of steel under specified circumstances would be subject to intrastate rates. In a shipper's suit attacking the order, the supreme court agreed the order was a final order within the meaning of a statute authorizing judicial review of the Commission's final orders. The court held the order not subject to judicial review, however, because the shipper's rights were not affected by the order: any civil or criminal liability against the shipper depended upon contingencies—the bringing and outcome of a future proceeding against the shipper for not complying with the Commission order. As to the existing order, the shipper was in no different position than it was before the Commission issued the order; and in

any future proceeding to enforce the order against the shipper, it would be as free as before to assail its validity. *Sun Oil Co.*, 311 S.W.2d at 237–38. The practice of administrative agencies giving advisory opinions informally, about the agency's views of the statutory provisions entrusted to its administration, is beneficial in the foreknowledge it provides and in the time and money saved by avoiding formal proceedings. "[T]o permit suits for declaratory judgments upon mere informal, advisory, administrative opinions might well discourage the practice of giving such opinions, with a net loss of far greater proportions" than any possible gain. *Helco Prods. Co., Inc. v. McNutt*, 137 F.2d 681, 684 (D.C.Cir.1943).

regard, we need not consider whether the trial court had jurisdiction under that statute.[4]

We reverse the trial court judgment and order the cause dismissed for want of subject-matter jurisdiction.

**4.** The cause of action for declaratory judgment authorized in section 2001.038 extends only to a court's determining the validity and applicability of an agency "rule." The statute does not purport to authorize suits for declaratory judgments determining the validity and applicability of a statute.