# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00313-CV

**Texas Department of Insurance, Appellant**

**v.**

**Reconveyance Services, Inc., Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-06-000034, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

This is a straightforward administrative law case in which the legislature has chosen to "completely regulate the business of title insurance" and to delegate the implementation and enforcement of this regulatory scheme to the Department, giving broad authority to the Department and providing limited judicial review to the courts. *See* Tex. Ins. Code Ann. §§ 31.002, .021, 2501.002 (West Supp. 2006). This Court has previously considered and squarely rejected the propriety of judicial review under the Uniform Declaratory Judgments Act (UDJA)[1] of an informal advisory opinion given by an employee of an administrative agency. *Texas Comm'n Licensing & Regulation v. Model Search Amer., Inc.*, 953 S.W.2d 289, 291-93 (Tex. App.—Austin 1997, no writ). Because the district court was without jurisdiction in this case and because the majority allows the manufacture of a justiciable controversy where none exists, I respectfully dissent.

---

[1] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997 & Supp. 2006).

Reconveyance is an out-of-state corporation that seeks to offer a service it calls "post-closing mortgage release services" for a fee to Texas consumers. According to Reconveyance, it may offer these services directly to Texas consumers without running afoul of Texas law. But Reconveyance's preferred business plan was to offer these services to consumers through Texas title companies and title agents. As Reconveyance stated to the trial court below, this would be the most "logical" way to offer these services. Reconveyance claims that its services will "help [ ] residential property buyers protect the marketability of their title from unreleased prior mortgages."[2] Under Reconveyance's preferred business plan, Texas title companies and title agents would simply pass the fee for Reconveyance's services along to Texas consumers.[3]

In order to put its preferred business plan into action, Reconveyance sought input from the Department on whether Texas title companies and title agents would be permitted to pass the fee for Reconveyance's services along to Texas consumers. In response to Reconveyance's inquiry, which does not appear in the record, a Department employee, Robert York, Director, Title

---

[2] In reality, services such as those offered by Reconveyance are wholly unnecessary in Texas because, as the representative from Southern Title Insurance Corp. states, "[T]he underwriters in Texas now have mutual indemnity treaties which frequently take care of the immediate problem of an unreleased deed of trust." In any event, Reconveyance's assertion that it is providing a service not currently offered by title companies or title agents goes to the merits of its proposal.

[3] Although Reconveyance maintains that a pass-through fee is permitted under insurance code section 550.001(a)(6), the Department responds that section 550.001 is not applicable to title insurance because it neither mentions the business of title insurance or title insurance companies nor is section 550.001 specifically enumerated in section 2551.001 as applying to title insurance companies. *See* Tex. Ins. Code Ann. §§ 550.001(a)(6), 2551.001 (West Supp. 2006). But, even if we assume section 550.001 applied in this case, it would still prohibit title insurance companies or agents from collecting the fee sought by Reconveyance because section 550.001 authorizes such fees only if they are solicited or collected "in connection with an application for insurance or the issuance of a policy." Reconveyance, however, asserts that its fee is for an additional service not offered in connection with an application for insurance or issuance of a policy.

Examinations, sent an e-mail advising Reconveyance that the insurance code prohibited the fee proposed by Reconveyance because the definition of "closing the transaction" encompasses the services Reconveyance sought to offer and the cost for such services was already included within the title insurance premium rate promulgated by the commissioner. Therefore, in York's view, title insurance companies and title agents would not be able to charge Texas consumers an additional pass-through fee for Reconveyance's services. York further advised Reconveyance of "a pending disciplinary action (with fines recommended) against an agent for charging a fee for release tracking services" and stated, "I believe you misunderstood my point of view regarding these types of services." York cautioned Reconveyance: "I don't mind answering your questions about the Texas rules and regulations related to the services you are trying to market, but I cannot endorse or appear to endorse any product or service being marketed to title agents. Therefore, I obviously cannot sign anything that implies such an endorsement." He concluded: "I sincerely hope that you are not trying to market your product as something that has been endorsed by the Department or by the State or by any State employee. If a title agent asks me about a service such as the one you are providing, I will advise them of the points I mentioned above."

Although not in the record properly before us on appeal, Reconveyance wrote a subsequent letter to Robert Carter, Deputy Commissioner, Title Insurance Division, "trying to resolve this issue." In its petition, Reconveyance alleged that the letter advised Carter that "[the Department] had informed the title industry that title companies could not charge a separate fee for the post-closing mortgage release services offered by companies by Plaintiff [sic]," and asked him

3

to agree that assessment of the fee "is both permissible and appropriate." Reconveyance did not receive a response to its letter.

Disagreeing with the only advice it received from the Department—namely, the e-mail response from York—Reconveyance filed suit in district court under the UDJA seeking a declaration that its proposed services are not within the insurance code's definition of "closing the transaction." Although Reconveyance characterizes its request for declaratory judgment as a statutory construction issue "based solely on a matter of law," it is nothing more than a request for judicial review of the advice Reconveyance received in an e-mail from a single agency employee. On these facts, I would conclude that the district court lacked subject matter jurisdiction and Reconveyance fails to present a justiciable controversy; therefore, the district court should have granted the Department's plea to the jurisdiction.

***Separation of powers deprives the district court of jurisdiction.***

The question posed by this appeal, then, is whether the separation of powers mandated by article II, section 1, of the Texas constitution deprives the district court of jurisdiction. The majority, however, drifts off into territory not contemplated by the parties, addressing issues neither raised nor briefed by the parties on appeal.

1.      *This Court's decision in* Model Search *should control the outcome here.*

It is well settled Texas law that the doctrine of separation of powers precludes a court from reviewing the actions of an administrative agency unless the legislature has provided a cause of action for that purpose in a proper statute or the plaintiff complains that the agency action is

*ultra vires* or unconstitutional in its effect on the plaintiff or its property. *Model Search*, 953 S.W.2d at 291 (citing *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978); *Chemical Bank & Trust Co. v. Falkner*, 369 S.W.2d 427, 432 (Tex. 1963)); *see also Texas State Bd. of Exam'rs in Optometry v. Carp*, 343 S.W.2d 242, 246 (Tex. 1961) (holding that courts are without authority to interfere with an agency's "lawful exercise of duties and functions committed to [it] by law"). Like the plaintiff in *Model Search*, Reconveyance argues that the UDJA provides statutory authority for the court to review an informal advisory opinion given by an agency employee. *See Model Search*, 953 S.W.2d at 291. But this Court squarely rejected that argument concluding that "[w]hile the [UDJA] authorizes a district court to award a remedy not otherwise available at common law, the statute does not itself create jurisdiction in the district court to review an agency action not otherwise reviewable." *Id.*

The question presented in *Model Search* is no different than the question presented by Reconveyance here. Like Reconveyance, Model Search was an out-of-state corporation that sought declaratory relief in the trial court because it disagreed with the agency's interpretation of statutory provisions the agency was charged by the legislature to enforce. *Id.* at 290, 291. Model Search met with the Commission's general counsel and director of enforcement to express its view that the corporation's business activities did not fall within the statutory provisions enforced by the Commission. When the Commission's general counsel and director expressed the contrary view that Model Search's activities fell squarely within the statutory provisions at issue, Model Search sued the Commission and sought a declaratory judgment that the statutory provisions at issue were

inapplicable to Model Search. *Id.* at 291. Because it disagreed with the opinion expressed by York, Reconveyance has sued the Department and seeks a similar declaratory judgment here.

Although in *Model Search* the trial court asserted jurisdiction and ultimately granted declaratory relief, this Court reversed on appeal and dismissed the cause for want of jurisdiction. *Id.* As this Court recognized in *Model Search*, the UDJA does not create jurisdiction in the trial court to review an agency action not otherwise reviewable. *Id.* at 291-92 (citing *North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 458 (Tex. App.—Austin 1992, writ denied); *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663, 667-68 (Tex. App.—Austin 1987, no writ)); *see also Public Util. Comm'n v. J.M. Huber Corp.*, 650 S.W.2d 951, 954 (Tex. App.—Austin 1983, writ ref'd n.r.e.). The result should be no different here.

2. *Reconveyance fails to establish a valid* ultra vires *claim.*

Construing Reconveyance's pleadings "liberally," the majority claims Reconveyance "has pled this type of claim: it alleges that [the Department] has no statutory authority to regulate or prohibit title agents and insurers from charging a separate fee to provide Reconveyance's services [and] asserts that the agency is acting beyond its statutory authority in purporting to do so." Even a liberal construction cannot achieve the majority's desired reading. Reconveyance seeks "a declaration that the post-closing services of releasing a prior existing mortgage are not among the duties of a title agent that comprise 'closing the transaction' and therefore are not included in the basic premium rate." It asks the Department "to agree that assessment of a separate fee for the

6

delivery of post-closing mortgage conveyance services is both permissible and appropriate," and complains that the Department's "current position prohibits Plaintiff from having Plaintiff's beneficial services provided by title companies." But nowhere in its pleadings before the trial court does Reconveyance assert that the Department has exceeded its statutory authority or that its action was otherwise *ultra vires*. Although Reconveyance concedes the Department is authorized to regulate the business of insurance in Texas, it urges for the first time on appeal that the Department's interpretation of "closing the transaction" is *ultra vires*.[4]

Relying on this Court's opinion in *Bexar Metropolitan Water District v. City of Bulverde*, 156 S.W.3d 79, 90 (Tex. App.—Austin 2004, pet. denied), Reconveyance contends that it need not allege *ultra vires* action or unconstitutional effect to preserve a court's jurisdiction "to perform the judicial function of statutory interpretation" unless a statute gives an administrative agency exclusive jurisdiction to do so. Reconveyance's reliance on *Bulverde* is misplaced.

Unlike the circumstances addressed in *Bulverde*, the legislature has delegated authority to the Department "to *completely regulate* the business of title insurance." Tex. Ins. Code Ann. § 2501.002 (emphasis added). The legislature could hardly have spoken more clearly in its grant of power. It is axiomatic that this delegation of authority necessarily includes the power to render advisory opinions interpreting those statutes the Department is charged with enforcing.[5] *See*

---

[4] In its brief to this Court, Reconveyance urges, "In the alternative, to the extent this Court concludes the trial court can only provide statutory construction of Section 2501.006 in light of an allegation of ultra vires action, [Reconveyance] does allege that [the Department] has exceeded its statutory authority."

[5] It is precisely for this reason that courts will traditionally defer to an agency's reasonable construction of the statute the agency is charged with enforcing. *E.g.*, *State v. Public Util. Comm'n*, 883 S.W.2d 190, 196 (Tex. 1994); *Quorum Sales, Inc. v. Sharp*, 910 S.W.2d 59, 64 (Tex. App.—Austin 1995, writ denied).

7

2 Ronald L. Beal, *Texas Administrative Practice & Procedure* § 12.2, at 12-49 (2006). Moreover, the Texas Supreme Court and this Court have held that the legislature's use of similar statutory language creates a "pervasive regulatory scheme" granting exclusive jurisdiction to the administrative agency charged with enforcing that scheme. *See In re Entergy Corp.*, 142 S.W.3d 316, 323 (Tex. 2004) (concluding administrative agency had exclusive jurisdiction where the legislature established a "comprehensive and adequate regulatory system" for electric utilities); *Texas Court Reporters Certification Bd. v. Esquire Deposition Servs., L.L.C.*, 240 S.W.3d 79, 89-90 (Tex. App.—Austin 2007, no pet. h.) (concluding administrative agency had exclusive jurisdiction even though legislature did not use the term "exclusive" to describe the board's jurisdiction). In *Bulverde*, however, there was no statute that created a "pervasive regulatory scheme" or explicitly delegated exclusive jurisdiction to the agency. Thus, *Bulverde* does not excuse Reconveyance's failure to allege an *ultra vires* claim in the trial court below.

Given Reconveyance's failure to assert this claim in the trial court below, its *ultra vires* claim has not been properly preserved and, therefore, has been waived. Tex. R. App. P. 33.1; *see also Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 880 & n.41 (Tex. 1999); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 871 (Tex. App.—Dallas 2005, no pet.).

Even assuming there has been no waiver, Reconveyance has not established a valid *ultra vires* claim. The crux of Reconveyance's complaint is not that the Department has exceeded its statutory authority but that the Department has erroneously interpreted the statute at issue. Reconveyance's attempt on appeal to recast its disagreement with the Department's statutory interpretation into a valid *ultra vires* claim is simply designed to create jurisdiction where there is

none.  *Cf. Thomas v. Long*, 207 S.W.3d 334, 342 (Tex. 2006) (holding the fact suit is brought as a declaratory judgment action does not alter the court's jurisdictional analysis).  By its conclusion that Reconveyance asserts a valid *ultra vires* claim, the majority makes much of an inchoate—and hypothetical—argument.

This Court rejected a similar argument in *Beacon National Insurance Company v. Montemayor*, 86 S.W.2d 260 (Tex. App.—Austin 2002, no pet.).  In that case, the Department issued a series of letters addressing Beacon's handling of roofing claims and interpreting various provisions of Form B—a homeowners' insurance policy form promulgated by the Department.  Beacon sought a declaratory judgment based on its complaint that the Department erred in its construction of the provisions contained within Form B.  *Id.* at 266.  Beacon argued that the Department exceeded its statutory authority because its construction was wrong.  *Id.*  This Court rejected that argument, finding the basis for Beacon's complaint that the Department exceeded its statutory authority was insufficient to confer jurisdiction.  *Id.* at 267.  Just like Beacon, Reconveyance seeks declaratory judgment because it disagrees with the Department's interpretation.  As this Court explained in *Beacon*, "[w]hether [the Department]'s interpretation is correct or incorrect cannot be the factor that confers jurisdiction."  *Id.*

Moreover, we have before us *at most* an informal advisory opinion given in an e-mail by an agency employee—in this case, the Department's director of title examinations, Robert York.**[6]**

---

**[6]**  Although one commentator has called for clearer judicial recognition and review of "informal" agency opinions—or what he terms "interpretive rules"—*see* Ron Beal, *A Miry Bog Part II:  UDJA and APA Declaratory Judgment Actions and Agency Statements Made Outside a Contested Case Hearing Regarding the Meaning of the Law*, 59 Baylor L. Rev. 267, 284-85 (2007) ("*A Miry Bog Part II*") (urging that informal agency interpretations, or interpretive rules, which have

We do not have a final agency order, nor do we even have an order rendered by the Department's chief executive and administrative officer—i.e., the Commissioner of Insurance. *See* Tex. Ins. Code Ann. § 31.021(a). This is not a case in which the Department is acting wholly outside its jurisdiction or in a rogue manner, but rather a case in which Reconveyance "sounded out" an agency employee and now attempts to bootstrap his informal advice into an actionable cause. Were we to hold that every informal interpretation of a statute given by employees of an administrative agency constituted an *ultra vires* act sufficient to confer jurisdiction, the *ultra vires* exception to the doctrine of exhaustion of administrative remedies would swallow the rule. *See* Beal, *supra*, § 12.2, at 12-49; *see also Gonzalez v. Texas Educ. Agency*, 882 S.W.2d 526, 528 (Tex. App.—Austin 1994, no writ) (per curiam).

　　　　To the extent the majority champions judicial review under the UDJA of an informal opinion given by an employee of an administrative agency, the majority transfers the power to render advisory opinions from the executive branch to the judicial branch in violation of the constitution. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The doctrine

significant impact on regulated entities, should be subject to judicial scrutiny and review under section 2001.038 of the Administrative Procedure Act), the opinion given by York in this case does not even rise to the level of an interpretive rule. An interpretative rule does not include every statement made by an agency or its employees. Indeed, the same commentator has recognized that his analysis of interpretive rules does not apply and a declaratory judgment would be unavailable for the overwhelming bulk of advisory interpretations that are issued by agency employees in the form of advisory letters, oral advice, or legal briefs, regardless of whether such interpretations are issued to agency employees, the public at large, or a specific regulated party. *See* Ron Beal, *Administrative Law 2004 Update and Analysis*, 57 Baylor L. Rev. 359, 399 (2005). According to this commentator's analysis, a declaratory judgment would be available only for those statements "deliberately issued by agencies with intent to inform the regulated public and the public at-large of its interpretation of existing law and how it intends to apply that interpretation consistently in all future agency actions." *See A Miry Bog Part II*, *supra*, 59 Baylor L. Rev. at 271.

of separation of powers prohibits courts from issuing advisory opinions because this is a function of the executive, not judiciary, branch. Tex. Const. art. II, § 1; *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007); *Texas Ass'n of Bus.*, 852 S.W.2d at 444; *see also California Prods., Inc. v. Puretex Lemon Juice, Inc.*, 334 S.W.2d 780, 781-83 (Tex. 1960) (in granting courts jurisdiction to adjudicate controversies under the UDJA, the legislature did not intend to authorize the giving of advisory opinions).

> 3.       *Reconveyance does not allege an unconstitutional effect.*

Nowhere in its pleadings does Reconveyance allege that the Department's opinion creates an unconstitutional effect on Reconveyance or its property.[7] The majority discusses at length the pleadings and jurisdictional evidence submitted by Reconveyance. But issues of pleadings and jurisdictional evidence are irrelevant in this context because, as the majority acknowledges, the Department does not challenge the jurisdictional facts alleged by Reconveyance. In the absence of such a challenge, we take the pleadings as true and need not consider evidence submitted by the parties. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

Based on this Court's prior opinions in *Model Search* and *Beacon*, separation of powers deprives the district court of jurisdiction to consider Reconveyance's claim. ***No justiciable controversy exists between Reconveyance and the Department.***

---

[7] To the extent Reconveyance argues that it is an "affected person" within the meaning of the UDJA and, therefore, has standing to sue, that issue is addressed below. *See* discussion *infra* (regarding whether Reconveyance has established a justiciable controversy).

11

In order to maintain a cause of action under the UDJA, Reconveyance must present a justiciable controversy as to the rights and status of the parties, and the controversy must be resolved by the declaration sought. *See Texas Ass'n of Bus.*, 852 S.W.2d at 446. To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). Subsumed within the threshold question of whether Reconveyance presents a justiciable controversy are issues of standing and ripeness. *Texas Ass'n of Bus.*, 852 S.W.2d at 443-46; *Texas Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 281-82 (Tex. App.—Austin 2000, pet. denied). Where the district court lacks jurisdiction in any of these respects, its decision would constitute an advisory opinion prohibited under article II, section 1 of the Texas Constitution. *Texas Ass'n of Bus.*, 852 S.W.2d at 444; *Texas Dep't of Banking*, 27 S.W.3d at 282. Although the majority correctly recognizes that a cause of action is appropriate under the UDJA only if (1) a justiciable controversy exists as to the rights and status of the parties; and (2) the controversy will be resolved by the declaration sought, the majority errs in its conclusion that Reconveyance has pleaded a proper UDJA claim.

1.      *Reconveyance lacks standing because it has suffered no concrete injury.*

The UDJA allows a person "whose rights, status, or other legal relations are affected by a statute" to obtain a declaration of its rights, status, or other legal relations thereunder, *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997), but Reconveyance is not an "affected" person within the meaning of the UDJA. As a foreign corporation, Reconveyance has no legal right, constitutional or otherwise, to conduct business in Texas without complying with all statutory

12

conditions. *See Model Search*, 953 S.W.2d at 291. Moreover, Reconveyance has not suffered a concrete injury as a result of the statute or the Department's interpretation thereof.

Reconveyance does not currently offer its "post-closing mortgage services" through Texas title insurance companies or agents. Accordingly, the Department's opinion does not affect Reconveyance's current business operations, and Reconveyance has suffered no injury as a result of the Department's advisory opinion. *See Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 768 (Tex. App.—Austin 1999, no pet.) (holding plaintiff's speculation that favorable declaratory judgment would induce business owners to utilize plaintiff's services does not entitle plaintiff to declaratory judgment).

In *Brinkley*, the Texas Lottery Commission sent letters to its bingo parlor licensees advising bingo parlor owners that use of "eight-liner" machines may be illegal. *Id.* at 767. Brinkley owned several eight-liner machines and leased space in various bingo parlors to operate the machines. Upon receipt of the Commission's letter, one of the bingo parlor owners from whom Brinkley leased space refused to allow Brinkley to continue operating the eight-liner machines in his bingo parlor. *Id.* Thereafter, Brinkley filed suit against the Commission seeking declaratory relief under the UDJA. *Id.* The trial court dismissed Brinkley's cause of action, and this Court affirmed, holding that Brinkley's cause of action required an advisory opinion. *Id.* at 766. We explained that Brinkley's claim necessarily speculates that a favorable declaratory judgment might induce bingo parlor owners to allow him to operate his eight-liners in their bingo parlors; however, we held that this was a contingency upon which we may not decide Brinkley's claims. *Id.* at 768.

The majority attempts to distinguish *Brinkley* on the ground that unlike Brinkley, who

13

merely speculated that bingo parlor owners would be induced by a favorable declaration to allow Brinkley to operate his eight-liners in their bingo parlors, Reconveyance alleges that title insurance companies and agents in Texas would be interested in using Reconveyance's services "if not for the position taken by [the Department]." But Reconveyance is in no better position than Brinkley. Indeed, Reconveyance is one step removed from Brinkley's position because Brinkley already had an established arrangement to lease space and operate his eight-liner machines in at least one bingo parlor, which ended as a result of the Commission's letter, *see id.* at 767, whereas Reconveyance does not currently transact any business in Texas, nor does Reconveyance allege that any Texas title company or agent previously used its services and stopped doing so as a result of the Department's e-mail. Accepting Reconveyance's allegations as true, as we must, *see Miranda*, 133 S.W.3d at 226-27, Reconveyance's claim remains speculative and hypothetical.

Although it is unnecessary to examine the jurisdictional evidence submitted by Reconveyance in the absence of the Department's challenge to the jurisdictional facts alleged by Reconveyance, *see id.*, I simply note the evidence cited by the majority only confirms the speculative nature of Reconveyance's claims. In support of its claims, Reconveyance submitted the affidavit of Jan Hollenbeck. Hollenbeck avers that "several title companies, however, have indicated they would offer RSI's services if [the Department] did not prohibit" the charge. Attached to Hollenbeck's affidavit are two communications dated after the original petition for declaratory judgment was filed. This evidence consists of an e-mail from a representative of Southern Title Insurance Corp. stating that "I . . . *would certainly recommend* [your services] to all of our agents in Texas and other states" and a letter from the vice president of Fidelity National Title Insurance Company and its subsidiary

14

member Alamo Title Insurance stating that the services offered by Reconveyance "*would be supported and entertained* by our companies if the charge for such services was a pass through charge with acknowledgment as such by the Texas Department of Insurance." (Emphases added.)

This evidence confirms that Reconveyance's position is more theoretical than Brinkley's because Brinkley already had an established arrangement to operate his eight-liners that ended as a result of the Commission's letters to bingo parlor owners, and there is no such relationship between Reconveyance and any Texas title insurance company or agent here. Moreover, neither of the statements presented by Reconveyance demonstrates that a title insurance company or title agent will actually offer Reconveyance's services to consumers in Texas. Rather, the statements merely provide that these title insurance companies "would recommend" or "would support and entertain" Reconveyance's services. These statements are no different than the allegations in *Brinkley* that bingo parlors might be induced to allow Brinkley to operate eight-liners in their bingo parlors.[8] *Brinkley*, 986 S.W.2d at 768. Like Brinkley, Reconveyance has suffered no concrete injury, and its request for declaratory relief is based on mere speculation that calls for an advisory opinion; therefore, I would conclude that this Court's prior opinion in *Brinkley* forecloses relief in this case. *See id.*

---

[8] Although it acknowledges that such statements "are not necessarily conclusive proof that the insurers would do business with Reconveyance," the majority concludes that this type of actual or threatened business injury from the effects of agency action gives rise to a justiciable interest that can support Reconveyance's UDJA claim. In support of this conclusion, the majority cites *Wal-mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 721-27 (Tex. 2001), and what the majority describes as "Texas's longstanding recognition of [the] common-law tort for tortious interference with prospective business relations." Surely, the majority is not suggesting that the Department or its employees would be liable to Reconveyance, or any other party, under this common-law tort theory.

15

2.      *Reconveyance cannot acquire standing based upon an alleged injury to a third party.*

The majority suggests that Reconveyance may satisfy the requirements of standing and justiciability based on the effects or presumed injury allegedly suffered by third party title insurance companies or title agents, who are not even part of this lawsuit. To support this assertion, the majority relies on this Court's opinion in *City of Waco v. Texas Natural Resources Conservation Commission*, 83 S.W.3d 169 (Tex. App.—Austin 2002, pet. denied), a case not urged by Reconveyance. In *City of Waco*, the TNRCC issued an order regulating future permits for confined animal feeding operation (CAFO) permits. *Id.* at 172. When the City and the Texas Association of Dairymen challenged the order by suing for declaratory relief, the TNRCC withdrew the order and argued that any lawsuit challenging the order was moot. The City amended its petition to argue that TNRCC's policy of continuing to issue CAFO permits violated state regulations. *Id.* Thus, the City raised an *ultra vires* challenge to the TNRCC's authority to issue CAFO permits.

The majority asserts that Reconveyance is in the same position as the City of Waco because Reconveyance, while not directly subject to the statutes the agency administered, was adversely affected by the Department's "refusal—based on its interpretation of the insurance code—to allow title companies to use Reconveyance's fee-based mortgage release services in Texas." The majority is wrong for two reasons. First, the Department has not refused to allow Texas title companies or agents *to use* Reconveyance's services. An employee has simply expressed the viewpoint that, if Texas title companies or agents use Reconveyance's services, they cannot charge consumers a pass-through fee for those services. Second, Reconveyance is not in the same

16

position as the City because, unlike Reconveyance, the City possessed and asserted a first-hand interest directly affected by the actions of the TNRCC—namely the City's right on behalf of its citizens to water in Lake Waco that met state and federal water quality standards.[9] Reconveyance has asserted no such right or interest.

While Texas law recognizes third party standing in some circumstances—e.g., associational standing or a third party contract beneficiary—this is not one of those circumstances. Reconveyance is neither an association nor a third party contract beneficiary, nor does Reconveyance satisfy any other recognized basis for third party standing. The majority cannot create standing for Reconveyance by bootstrapping an injury allegedly suffered by third parties who are not even part of this suit. Under these circumstances, I would conclude that Reconveyance lacks standing in this matter.

3.     *Reconveyance's claim is neither ripe, nor fit for judicial review.*

I agree with the general propositions that a business subject to state regulation may challenge that regulation before it is enforced against it, *see Atmos Energy v. Abbott*, 127 S.W.3d 852, 856 (Tex. App.—Austin 2004), and that a business need not show that an agency has enforced a regulation against it but only that enforcement action is "imminent or sufficiently likely." *Id.* But Reconveyance has not met this requirement.

Reconveyance does not challenge a regulation but, instead, challenges an administrative agency's employee's informal advisory opinion interpreting that regulation. Because

---

[9] Lake Waco was the sole source of drinking water for approximately 150,000 people in and around Waco and was also used extensively for recreational activities. *City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.2d 169, 172 (Tex. App.—Austin 2002, pet. denied).

17

Reconveyance is not a title insurance company or a title agent, Reconveyance is not subject to the Department's enforcement of the regulation at issue. Ripeness is concerned in part with the institutional relationship between courts and agencies, and the competence of the courts to resolve disputes without further administrative refinement of the issues. The majority errs in its reliance on Reconveyance's allegation that the Department "has threatened disciplinary proceedings." The error is not cured by characterizing these allegations as "undisputed jurisdictional evidence."

In support of its allegation that the Department is likely to initiate enforcement proceedings, Reconveyance points to the following statement in the e-mail from York:

> [W]hen [the Department] see[s] an agent charge the fee directly to the consumer we cite the agent for a rule violation and tell them the fee is unauthorized. We currently have a pending disciplinary action (with fines recommended) against an agent for charging a fee for release tracking services.

But this statement fails to show that the Department stands ready to initiate enforcement proceedings *against Reconveyance*, and there is nothing in the record to show the facts, circumstances, or status of the other proceeding.

Because Reconveyance is not a party to the proceeding pending before the Department, Reconveyance cannot satisfy the ripeness requirement based on that proceeding unless it can demonstrate that the Department has imminent plans to enforce the regulation against Reconveyance. This it cannot do. The record fails to show that Reconveyance is subject to the regulation at issue. The pleadings, which we construe liberally, do not demonstrate that Reconveyance is currently offering its services in Texas, and Reconveyance concedes that it is not licensed by the Department. Thus, the Department has no basis for taking enforcement action

18

against Reconveyance. Even assuming that Reconveyance was permitted to offer its services to Texas consumers for a fee through title insurance companies or title agents, it would be the title insurance companies and title agents, not Reconveyance, who are subject to regulation and enforcement by the Department. *See* Tex. Ins. Code Ann. §§ 2551.351-.354, 2552.301-.302 (West Supp. 2006) (addressing Department's enforcement authority against title insurance companies and title agents). Accordingly, Reconveyance's claims are not ripe because there has been no showing that enforcement by the Department against Reconveyance is either imminent or sufficiently likely. *See Atmos Energy*, 127 S.W.3d at 856.

I am not persuaded by the majority's conclusion that Reconveyance claims are sufficiently ripe because Reconveyance has no other forum in which to seek redress. Not every word or deed of an administrative agency is subject to judicial review. *Firemen's & Policemen's Civil Serv. Comm'n of Fort Worth v. Kennedy*, 514 S.W.2d 237, 239 (Tex. 1974). Moreover, section 2703.203 of the insurance code provides a potential forum in which Reconveyance may seek a remedy. *See* Tex. Ins. Code Ann. § 2703.203 (West Supp. 2006). Under this provision, the legislature has directed the commissioner of insurance to hold a biennial hearing "to consider adoption of premium rates and other matters relating to regulating the business of title insurance that an association, title insurance company, title insurance agent, or member of the public requests to be considered or that the commissioner determines necessary to consider." *Id.* Even assuming, as the majority does here, that this statutory hearing is inadequate, Reconveyance has not shown that its claims will not be raised and addressed in the enforcement proceeding now pending before the Department—the same proceeding in which the Department has recommended fines against a title agent for charging a separate fee for release tracking services and the same proceeding on which

19

Reconveyance bases its allegations of imminent enforcement by the Department. Reconveyance's claims are not sufficiently ripe nor fit for judicial review.

## CONCLUSION

Although Reconveyance's arguments have some force, they are insufficient under the facts of this case to warrant a departure from prior precedent. The majority's opinion undoes settled expectations in administrative law by permitting suit on the basis of an informal, advisory opinion given in an e-mail by a single agency employee. As this Court recognized in *Brinkley*, "The legislature intends that administrative agencies exercise effectively the powers delegated to them." 986 S.W.2d at 769. To permit suits for declaratory judgment under the circumstances presented here will only encourage litigation, nullify an agency's ability to render assistance or give advice to the public, and allow premature judicial involvement. *See Helco Prods. Co. v. McNutt*, 137 F.2d 681, 684 (D.C. Cir. 1943); *see also Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (recognizing that businesses seek to clarify the meaning of a regulation by inquiring of an administrative agency, or by resort to an administrative process). Because the legislature has not provided for judicial review of an informal advisory opinion given by an employee of an administrative agency under the circumstances of this case and this Court is without jurisdiction, I respectfully dissent.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

20

Filed:   August 31, 2007